Adam D. Hosmer-Henner, Esq. (NSBN 12779)
Lucas Foletta, Esq. (NSBN 12154)
McDONALD CARANO LLP
100 W. Liberty, 10th Floor
Reno, NV 89501
Tel: 775 788 2000
ahosmerhenner@mcdonaldcarano.com
lfoletta@mcdoanldcarano.com

*Attorneys for Plaintiffs*
*Fair Maps Nevada PAC, Sondra Cosgrove,*
*Douglas Goodman, and Robert MacDonald*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| FAIR MAPS NEVADA, a Nevada political action committee, SONDRA COSGROVE, DOUGLAS GOODMAN, and ROBERT MACDONALD, <br><br> Plaintiffs, <br><br> vs. <br><br> BARBARA CEGAVSKE, in her official capacity as Nevada Secretary of State, JOSEPH P. GLORIA, in his official capacity as Clark County Registrar of Voters, DEANNE SPIKULA, in her official capacity as Washoe County Registrar of Voters, KRISTINA JAKEMAN, in her official capacity as Elko County Clerk, SADIE SULLIVAN, in her official capacity as Lander County Clerk, LACEY DONALDSON, in her official capacity as Pershing County Clerk-Treasurer, VANESSA STEVENS, in her official capacity as Storey County Clerk-Treasurer, NICHOLE BALDWIN, in her official capacity as White Pine County Clerk, SANDRA MERLINO, in her official capacity as Nye County Clerk, TAMMI RAE SPERO, in her official capacity as Humboldt County Clerk, KATHY LEWIS, in her official capacity as Douglas County Clerk-Treasurer, LINDA ROTHERY, in her official capacity as Churchill County Clerk-Treasurer, LACINDA ELGAN, in her official capacity as Esmeralda County Clerk-Treasurer, LISA C. LLOYD, in her official capacity as Lincoln County Clerk, LISA HOEHNA, in her official capacity as Eureka County Clerk, | CASE NO.: <br><br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

1  CHRISTOPHER NEPPER, in his official capacity
   as Mineral County Clerk-Treasurer, NIKKI
2  BRYAN, in her official capacity as Lyon County
   Clerk-Treasurer, and AUBREY ROWLATT, in her
3  official capacity as Carson City Clerk-Recorder

4

                        Defendants.
5

6          Fair Maps Nevada, a Nevada political action committee ("Fair Maps"), Sondra Cosgrove,

7  Douglas Goodman, and Robert MacDonald (together "Plaintiffs"), by and through their attorneys

8  of record of the law firm MacDonald Carano LLP, complain and allege against Barbara

9  Cegavske in her official capacity as Nevada Secretary of State, Joseph P. Gloria in his official

10 capacity as Clark County Registrar of Voters, Deanna Spikula in her official capacity as Washoe

11 County Registrar of Voters, Kristina Jakeman in her official capacity as Elko County Clerk,

12 Sadie Sullivan in her official capacity as Lander County Clerk, Lacey Donaldson in her official

13 capacity as Pershing County Clerk-Treasurer, Vanessa Stevens in her official capacity as Storey

14 County Clerk-Treasurer, Nichole Baldwin in her official capacity as White Pine County Clerk,

15 Sandra Merlino in her official capacity as Nye County Clerk, Tammi Rae Spero in her official

16 capacity as Humboldt County Clerk, Kathy Lewis in her official capacity as Douglas County

17 Clerk-Treasurer, Linda Rothery in her official capacity as Churchill County Clerk-Treasurer,

18 LaCinda Elgan in her official capacity as Esmeralda County Clerk-Treasurer, Lisa C. Lloyd in

19 her official capacity as Lincoln County Clerk, Lisa Hoehna in her official capacity as Eureka

20 County Clerk, Christopher Nepper in his official capacity as Mineral County Clerk-Treasurer,

21 Nikki Bryan in her official capacity as Lyon County Clerk-Treasurer, and Aubrey Rowlatt in her

22 official capacity as Carson City Clerk-Recorder ("Defendants") as follows:

23                            NATURE OF THE ACTION

24         1.      This action arises out of Fair Maps' proposal to amend the Nevada Constitution.

25 Fair Maps proposes to amend the Nevada Constitution to provide for the establishment of an

26 independent redistricting commission to draw Nevada's electoral maps for the State Senate,

27 Assembly and U.S. House of Representatives.   Toward that end, Fair Maps filed Amended

28 Initiative Petition C-02-2019 (the "Initiative") on November 4, 2019.

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

2.     Since the Initiative was filed, however, the Covid-19 pandemic ("Pandemic") has gripped our state and country.   In response, all levels of the government have issued social distancing requirements that preclude the interpersonal contact necessary to gather sufficient signatures to qualify the Initiative for the November 2020 ballot using traditional means; Fair Maps cannot engage in the direct person to person contact necessary to solicit signatures on an initiative circulated by hand as is traditionally done and in the time allotted pursuant to state law.

3.     In recognition of this difficulty, Fair Maps requested relief from the Secretary of State (the "Secretary"), Nevada's chief elections officer.   Fair Maps requested that the Secretary (1) extend the deadline for submitting the Initiative for verification, (2) clarify that Fair Maps may circulate the Initiative electronically, and (3) clarify that signers may execute the Initiative using electronic signatures.   The Secretary of State refused, indicating that Nevada statutes preclude both actions.

<u>PARTIES</u>

4.     Plaintiff Fair Maps is a Nevada Committee for Political Action Advocating Passage or Defeat of a Ballot Question registered pursuant to NRS 294A.230.   Fair Maps filed the Initiative and is advocating for its passage.   Fair Maps is responsible for circulating the Initiative for signature and otherwise qualifying it for the ballot.   Fair Maps' address is PO Box 751271, Las Vegas, Nevada 89136. The interests Fair Maps seeks to protect in this action, in addition to the ability to place the Initiative on the ballot, relate to the voting rights of all Nevadans including its supporters and funders, and these interests are germane to Fair Maps' purpose.

5.     Plaintiff Dr. Sondra Cosgrove is a duly registered Nevada voter and resident of Las Vegas, Nevada.   She has voted in every election in Nevada since 1988, including voting on ballot questions.   She has signed the Initiative.   She is also the President of the League of Women Voters of Southern Nevada and the League of Women Voters of Nevada.   She is a professor of history at the College of Southern Nevada.   If the Initiative is not included on the ballot, she will be unable to vote for it.

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

6.     Plaintiff Robert MacDonald is a duly registered Nevada voter and resident of Las Vegas, Nevada. He has voted in every election in Nevada since 2016, including voting on ballot questions. He has not signed the Initiative because he is adhering to the social distancing recommendations and requirements issued by State, federal and local government. MacDonald's adherence to these requirements is particularly important as he has a pre-existing condition that makes her particularly susceptible to the health risks associated with COVID-19.

7.     Plaintiff Douglas Goodman is a duly registered Nevada voter and resident of Sparks, Nevada. he has voted in every election in Nevada since 2014, including voting on ballot questions. He intends to be a circulator of the Initiative. However, Goodman has not begun circulating the Initiative because she is adhering to the social distancing recommendations and mandates issued by State, Federal and local government.

8.     Defendant Barbara Cegavske ("Secretary of State" or the "Secretary") is the Nevada Secretary of State and is named as a Defendant in her official capacity. Secretary Cegavske is the Chief Officer of elections for the State of Nevada. NRS 293.124(1). Her responsibilities include, but are not limited to, execution and enforcement of all provisions of state and federal law relating to elections, including NRS 295.056 and NRS 295.0575. *See id*. She is further authorized to "provide interpretations and take other actions necessary for the effective administration of the statutes and regulations governing the conduct of primary, general, special and district elections in this State." NRS 293.247(4).

9.     Defendant Joseph P. Gloria is the Clark County Registrar of Voters and is sued in his official capacity. He is responsible for implementing certain of Nevada's election laws, and his responsibilities include verifying initiatives. NRS 295.056(1).

10.     Defendant Deanna Spikula is the Washoe County Registrar of Voters and is sued in her official capacity. She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives. *Id*.

11.     Defendant Kristina Jakeman is the Elko County Clerk and is sued in her official capacity. She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives. *Id*.

4

12.     Defendant Sadie Sullivan is the Lander County Clerk and is sued in her official capacity.  She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives.  *Id.*

13.     Defendant Lacey Donaldson is the Pershing County Clerk-Treasurer and is sued in her official capacity.  She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives.  *Id.*

14.     Defendant Vanessa Stevens is the Storey County Clerk-Treasurer and is sued in her official capacity.  She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives.  *Id.*

15.     Defendant Nichole Baldwin is the White Pine County Clerk, and is sued in her official capacity.  She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives.  *Id.*

16.     Defendant Sandra Merlino is the Nye County Clerk, and is sued in her official capacity.  She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives.  *Id.*

17.     Defendant Tammi Rae Spero is the Humboldt County Clerk, and is sued in her official capacity.  She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives.  *Id.*

18.     Defendant Kathy Lewis is the Douglas County Clerk-Treasurer, and is sued in her official capacity.  She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives.  *Id.*

19.     LaCinda Elgan is the Esmeralda County Clerk-Treasurer, and is sued in her official capacity.  She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives.  *Id.*

20.     Lisa C. Lloyd is the Lincoln County Clerk, and is sued in her official capacity.  She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives.  *Id.*

21.     Lisa Hoehna is the Eureka County Clerk, and is sued in her official capacity.  She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives.  *Id.*

22.     Christopher Nepper is the Mineral County Clerk-Treasurer, and is sued in his official capacity.  He is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives.  *Id.*

23.     Nikki Bryan is the Lyon County Clerk-Treasurer, and is sued in her official capacity.  She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives.  *Id.*

24.     Aubrey Rowlatt is the Carson City Clerk-Recorder, and is sued in her official capacity.  She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives.  *Id.*

<u>JURISDICTION AND VENUE</u>

25.     This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the U.S. Constitution and seeks equitable and other relief for the deprivation of constitutional rights under color of state law.

26.     This Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367 because Plaintiffs' state law claims are interrelated with Plaintiffs' federal claims and arise out of a common nucleus of operative fact.

27.     This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

28.     This Court has personal jurisdiction over Defendants, who are sued in their official capacities.  The Secretary is a state official who works in Carson City, Nevada.   Joseph P. Gloria is a county official who works in Clark County, Nevada.  Deanna Spikula is a county official who works in Washoe County, Nevada.  Kristina Jakeman is a county official who works in Elko County, Nevada.  Sadie Sullivan is a county official who works in Lander County, Nevada.  Lacey Donaldson is a county official who works in Pershing County, Nevada.  Vanessa Stevens is a county official who works in Storey County, Nevada.  Nichole Baldwin is a county

official who works in White Pine, County.  Sandra Merlino is a county official who works in Nye County, Nevada. Tammi Rae Spero is a county official who works in Humboldt County, Nevada.  Kathy Lewis is a county official who works in Douglas County, Nevada.  Linda Rothery is a county official who works in Churchill County, Nevada.  LaCinda Elgan is a county official who works in Esmeralda County, Nevada.  Lisa C. Lloyd is a county official who works in Lincoln County, Nevada.  Lisa Hoehna is a county official who works in Eureka County, Nevada.  Christopher Nepper is a county official who works in Mineral County, Nevada.  Nikki Bryan is a county official who works in Lyon County, Nevada.  Aubrey Rowlatt is a local government official who works in Carson City, Nevada.

29.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are State and local officials working in Nevada.  A substantial part of the events giving rise to these claims occurred and continue to occur in this District, making venue also proper under 28 U.S.C. § 1391(b)(2).

<u>FACTUAL BACKGROUND</u>

**A.      The Initiative**

30.     On November 4, 2019, Plaintiff filed Initiative Petition C-02-2019 pursuant to Article 19, Section 2.  If enacted, the Initiative will amend the Nevada State Constitution to provide for an independent redistricting commission to map electoral districts for the Nevada Senate, Assembly and U.S. House of Representatives.

31.     On November 26, 2019, a lawsuit was brought in Carson City, Nevada challenging the legal sufficiency of the description of effect appended to the Initiative. On January 7, 2020, Fair Maps filed Amended Initiative Petition C-02-2019 (the "Initiative") to reflect changes made to the description of effect following resolution of the case in district court. A copy of the Initiative is included here as Exhibit 1.

32.     While Fair Maps continued and will continue to gather signatures in support of the Initiative, the challenger to the Initiative appealed to the Nevada Supreme Court where issues relating to the Initiative remain pending. This appeal is meritless as the challenger was the

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

prevailing party at the district court and the appeal is intended only to cause delay in order to hamper the ability of the Initiative to qualify for the November 2020 ballot.

33.     Pursuant to the Nevada Constitution, in order to qualify the Initiative for inclusion on the November 2020 ballot, the Initiative must be signed "by a number of registered voters equal to 10 percent or more of the number of voters who voted at the last preceding general election in not less than 75 percent of the counties in the State, but the total number of registered voters signing the initiative petition shall be equal to 10 percent or more of the voters who voted in the entire State at the last preceding general election." Nev. Const. art. 19, § 2(2).

34.     NRS 295.056(3) establishes the date by which the proponent of an initiative must submit initiative documents for verification to the county clerks.  NRS 295.056(3).  Where, as here, the initiative proposes an amendment to the Nevada State Constitution, the deadline is the fifteenth day after the primary election.  *Id.*  This year, that date falls on June 24, 2020.

35.     Included with each document of the Initiative must be a circulator's affidavit. NRS 295.0575.  Pursuant to NRS 295.0575, the affidavit must, among other things, affirm that the circulator "personally circulated the document," and "the signatures were affixed in the circulator's presence."  NRS 295.0575(1), (5).

**B.     The Pandemic**

36.     The Pandemic has resulted in the near total cessation of public activity in Nevada. This necessary public health action is the result of the adoption of guidance by the federal government and adherence to legal directives issue by the Governor of the State of Nevada.

37.     On January 30, 2020, the World Health Organization declared that the novel coronavirus (COVID-19) constitutes a Public Health Emergency of International Concern.  (Ex. 2 at 2.)

38.     On January 31, 2020, President Donald Trump suspended entry into the United States by all foreign nationals who had traveled to China in the past 14 days.  (Ex. 3 at 3-6.)

39.     On February 24, 2020, President Trump asked Congress to allocate $2.5 billion for a COVID-19 response.  (Ex. 4 at 3.)

40. On February 25, 2020, the Director of the National Center for Immunization and Respiratory Diseases at the Centers for Disease Control and Prevention ("CDC") announced that "[d]isruption to everyday life may be severe" as a result of the virus. (Ex. 5 at 2.) Regarding the spread, the Director stated that "[i]t's not so much a question of if this will happen anymore but rather more of a question exactly when this will happen," and called upon the American public to "work with us to prepare." (*Id*. at 1.)

41. On February 26, 2020, CDC officials stated that "[n]on-pharmaceutical interventions or NPIs will be the most important tools in our response to this virus," and that such NPIs included "social distancing measures." (Ex. 6 at 1-2.)

42. On February 27, 2020, the CDC issued further guidance recommending that affected local communities reducing the frequency of large gatherings and limiting the number of attendees. (Ex. 7.)

43. On March 13, 2020, the President declared a national state of emergency regarding COVID-19. (Ex. 8 at 2-3.)

44. The CDC recommends that Americans practice social distancing including maintaining a distance of six feet between persons. (Ex. 9.)

45. On March 16, 2020, the President recommended broad social distancing guidelines for all Americans to "slow the spread" of COVID-19. (Ex. 10.) The guidance was initially for a fifteen-day effective period. (*Id*.) On April 2, 2020, President Trump extended the guidance for thirty days. (*See* Ex. 11.)

46. President Trump's social distancing guidelines focus on reducing interpersonal contact of all Americans. His guidelines recommend the following actions, among others:

- Listen to and follow the direction of your **STATE AND LOCAL AUTHORITIES**
- **IF YOU FEEL SICK**, stay home. Do not go to work. Contact your medical provider.

9

- **IF SOMEONE IN YOUR HOUSEHOLD HAS TESTED POSITIVE** for the Coronavirus, keep the entire household at home.  Do not go to work.  Do not go to school.  Contact your medical provider.
- **IF YOU ARE AN OLDER PERSON**, stay at home and away from other people.
- **IF YOU ARE A PERSON WITH A SERIOUS UNDELRYING HEALTH CONDITION** that can put you at increased risk . . . , stay  home and away from other people.  (*Id*. at 1.)

47.     The President's guidance includes direction specifically for people that are healthy:

- Work or engage in schooling **FROM HOME** wherever possible.
- **AVOID SOCIAL GATHERINGS** in groups of 10 or more people.
- Avoid eating and drinking at bars, restaurants, and food courts—**USE DRIVE-THRU, PICKUP, OR DELIVERY OPTIONS**.  (*Id*. at 2.)

48.     On March 12, 2020, Governor Sisolak issued a Declaration of Emergency to facilitate the State's response to the Pandemic.  (Ex. 12.)

49.     Since issuing the Declaration of Emergency, Governor Sisolak issued several legal directives consistent with the President's guidelines and the CDC's recommendations, which have drastically limited interpersonal contact in Nevada.

50.     On March 31, 2020, Governor Sisolak issued a "stay at home" order.  (Ex. 13.)  In that order, Emergency Directive 010, the Governor extended his March 12, 2020 Declaration of Emergency through April 30, 2020.  (*Id*. § 1.)  He further ordered all Nevadans to stay in their home and not gather socially, subject to certain limited exceptions.  (*Id*. § 2.)

51.     Although Emergency Directive 010 "does not prohibit individuals from engaging in outdoor activity, including without limitation, activities such as hiking, walking, or running," individuals engaging in that activity must comply with Emergency Directive 007, maintain at least six feet distancing from other individuals, and not congregate in groups beyond their household members.  (*Id*. § 6.)

52.     The Governor issued Emergency Directive 007 on March 24, 2020.  (Ex. 14.) That order imposes certain social distancing requirements on Nevadans.  Specifically, it provides that, with the exception of persons residing in the same household, Nevadans must "to the extent practicable, abide by social distancing practices by maintaining a minimum six-foot distance between persons in public spaces, whether privately or publicly owned."  (*Id.* § 2.)     It also requires that local governments limit Nevadans use of recreational spaces.  (*Id.* § 3.)  Individuals that violate the social distancing restrictions in the order are subject to criminal and civil penalties.  (*Id.* §§ 5-6.)

53.     In addition to the restrictions identified above, Governor Sisolak closed non-essential business, including many retail establishments.  (Ex. 15 §§ 1-2.)

54.     Governor Sisolak also ordered the closure of state buildings.  (Ex. 16 at 2.)

55.      Local governments have taken similar action and agreed to use their enforcement authority to enforce the Governor's directives.  (Ex. 17.)

56.     On April 29, 2020, Governor Sisolak extended his stay at home order, with limited modifications, through May 15, 2020.  (Ex. 18 § 8.)

**C.     Signature gathering during the Pandemic**

57.     The Governor's actions make it extremely difficult to collect signatures to qualify the Initiative for the ballot in a traditional in-person manner.

58.     Under normal circumstances, signatures are gathered using a variety of methods, all of which require interpersonal contact inconsistent with the mandated social distancing. Eligible voters are contacted door-to-door at their homes, in front of retail establishments, restaurants and entertainment venues, or in or around government buildings to solicit their interest in signing an initiative.  If, after a brief conversation, an individual is interested in signing the initiative, the person signs the same piece of paper—most likely using the same pen—that others have signed.

59.     Due to the actions by the government, traditional signature gathering is extremely difficult and it is implausible that Fair Maps or any other initiative in Nevada will meet NRS 295.056(3)'s submission deadline.

McDONALD ⧫ CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

60.     Nevadans have been ordered to stay at home.  Most government buildings are closed.  Restaurants, bars and entertainments venues are closed.  Many retail establishments are closed.  Public events have been canceled *en masse*.  People are prohibited from gathering in parks in substantial numbers, and individuals must adhere to the extent practicable to a six-foot social distancing limitation.

61.     It is extremely challenging to gather physical ink signatures on hard copy documents in the time allotted as is traditionally done to qualify an initiative for the ballot.  It is equally challenging to satisfy the circulator's affidavit requirement in the traditional manner—by personal observation of signatures affixed in the presence of the circulator.

62.     Nothing in Nevada law, despite the Secretary's position, prohibits satisfying the signature and circulator's affidavit requirements through alternative means.  Electronic signatures may be used to execute an initiative and the circulator's affidavit requirement is satisfied where the circulator circulates an initiative electronically for electronic signature.

63.     Electronic signatures are widely utilized in Nevada in other contexts, including, court filings, business license filings, and corporate filings.  *See* Nev. Electronic Filing and Conversion Rule 11.

64.     As detailed below, any application of the statute to require physical signatures, in general or during the Pandemic, impermissibly infringes  Plaintiffs' constitutional rights, both state and Federal.

**D.     Nevada and other states have taken action to protect political speech in light of COVID-19**

65.     On March 24, 2020, the Secretary announced that Nevada would conduct its June 9, 2020 primary election by all mail out of concerns for the health and safety of voters and poll workers related to the Pandemic.  (Ex. 19.)  In doing so, the Secretary authorized all Nevada voters to vote by absentee ballot and required that all registered voters in Nevada be mailed an absentee ballot.  (*Id.*)  No voter will be required to request an absentee ballot to receive one.  (*Id.*)  However, the Secretary also ordered that one polling place in each county be available to

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

voters accommodate same-day voter registration, as well as assist voters who have issues with the ballot that was mailed to them. (*Id.*)

66.    In mandating that the primary be conducted by all mail, the Secretary did so despite the fact that an all-mail primary conflicts with certain elements of Nevada law, including NRS 293.272, which requires that most Nevadans who register to vote by mail or computer must, for the first election in which the person votes at which that registration is valid, vote in person unless he or she has previously voted in the county in which he or she is registered to vote.  NRS 293.272(1).

67.    In addition to taking precautions to safeguard the primary election, the Secretary has suspended in-person transactions at her office and is accepting all election filings electronically.  (Ex. 20.)

68.    Other jurisdictions in the United States have responded to the Pandemic by changing election processes and rules for elections and initiatives to accommodate political speech in the midst of the Pandemic.

69.    Ohio postponed their 2020 primary election until April 28, 2020.  (Ex. 21.)  Ohio conducted the election almost exclusively by mail and voting centers only opened for people with disabilities to vote in person.  (*See id.*)

70.    On March 25, 2020, a Virginia state court granted a preliminary injunction and ordered a reduction in the number of signatures needed for candidates to enter Virginia's primary election from 10,000 to 3,000. The court found that "the circumstances as they exist in the Commonwealth of Virginia and across the United States are not normal right now," and that the regulations requiring the signatures were not narrowly tailored because they "do[ ] not provide for emergency circumstances, like those that currently exist." *Faulkner v. Va. Dep't of Elections*, No. CL 20-1456, slip op. at 3 (Va. Cir. Ct. Mar. 25, 2020) (attached here as Exhibit 22.)

71.    On April 17, 2020, the Massachusetts Supreme Judicial Court, Massachusetts' highest court, ordered three forms of relief for candidates seeking access to the ballot: first a reduction in the signature requirements by 50%, second an extension of the deadlines for filing

McDONALD ⬥ CARANO

100 WEST LIBERTY STREET, TENTH FLOOR ⬥ RENO, NEVADA 89501
PHONE 775.788.2000 ⬥ FAX 775.788.2020

of signatures, and third, a requirement that the Secretary of State accept electronic rather than wet-ink original signatures. The court agreed with petitioners that "these extraordinary times of a declared state of emergency arising from the COVID-19 pandemic create an undue burden on prospective candidate's constitutional right to seek elective office." *Goldstein v. Sec'y of Commonwealth*, 142 N.E.3d 560, 564 (Mass. 2020) (attached here as Exhibit 23.)

72. On April 20, 2020, a federal court in Michigan granted a motion for preliminary injunction reducing the state signature requirement for a candidate to Michigan's Eleventh Congressional District after finding that "the State's actions in the form of enforcing both the Stay-at-Home Order and the statutory ballot-access requirements operate in tandem to impose a severe burden" on the Plaintiff. *Esshaki v. Whitmer*, No. 2:20-cv-10831-TGB, 2020 WL 1910154, at *1 (E.D. Mich. Apr. 20, 2020) (attached here as Exhibit 24.)

**E.      Nevada Secretary of State and the Initiative**

73. On April 20, 2020, Plaintiffs' counsel contacted the Secretary and made two requests. Fair Maps requested that Defendant clarify that NRS 295.0575 may be satisfied by electronic circulation of the Initiative and by the affixing of electronic signatures. (Ex. 25 at 3.) Fair Maps also requested that Defendant extend the deadline for submission of the Initiative for verification by at least six weeks. (*Id*. at 4.)

74. By letter of the same day, the Secretary denied Fair Maps' requests. (Ex. 26 at 1.)

75. Federal courts evaluating challenges to laws that regulate the election process apply the framework from *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). Under *Burdick*'s balancing and means-end fit framework, strict scrutiny is applied when the First or Fourteenth Amendment rights are subject to "'severe' restrictions." *Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1024 (9th Cir. 2016) (quoting *Burdick*, 504 U.S. at 434). However, "when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id*.

//

//

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

## CAUSES OF ACTION

### I.   INITIATIVE VERIFICATION AND EQUAL PROTECTION

**CLAIM 1: Undue Burden on the Right to Engage in Political Speech
(First and Fourteenth Amendments)**

76.     Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

77.     The First Amendment and Fourteenth Amendments to the U.S. Constitution enshrine the right of every Nevadan to speech and political expression free from government interference.  Circulation of initiative is core political speech.  *Prete v. Bradbury*, 438 F.3d 949, 961 (9th Cir. 2006).

78.     The challenged restrictions impose a severe burden on Plaintiffs' First Amendment Rights by impeding their ability to advocate for the Initiative and limiting their ability to actually earn a place for the Initiative on the ballot.  Due this severe burden, strict scrutiny applies to the challenged restrictions.  *Angle v. Miller*, 673 F.3d 1122, 1133 (9th Cir. 2012).

79.     In light of the restrictions imposed by the government in response to the Pandemic, requiring that the Initiative be submitted for verification no later than June 24, 2020 cannot withstand strict scrutiny.  Doing so is not narrowly tailored to satisfy a compelling government interest.

80.     Requiring the Initiative to be submitted for verification by June 24, 2020 will likely unnecessarily preclude the Initiative from appearing on the ballot.  More time can—and should be—allotted to collect signatures to ensure Plaintiffs' right to engage in political speech is sufficiently protected, and doing so will not compromise the government's interest in ensuring that only verified initiatives are included on the ballot.  Even if more time is allotted to gather the required signatures, the county clerks will have sufficient time to verify the Initiative.

81.     The Secretary has taken the necessary action to facilitate an all-mail primary, and she must similarly do so to protect Plaintiffs' constitutionally protected rights.   In refusing to do so, she is violating Plaintiffs' constitutional rights.

15

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

82.    Absent relief from this Court, requiring the Initiative to be submitted for verification no later than June 24, 2020 will prevent Plaintiffs from engaging in constitutionally protected speech in violation of the First and Fourteenth Amendments to the U.S. Constitution.

83.    Plaintiffs will suffer irreparable harm and injury and have no plain, adequate or speedy remedy at law to address the wrongs herein complained of other than this action. A substantial loss or impairment of freedom of expression will continue to occur absent injunctive relief.

### CLAIM 2: Undue Burden on the Right to Engage in Political Speech
### (Nevada Constitution)

84.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

85.    Article 1, Section 9 of the Nevada Constitution enshrines the right of every Nevadan to speech and political expression free from government interference. *See Univ. & Cmty. Coll. Sys. of Nev. v. Nevadans for Sound Gov't*, 100 P.3d 179, 187 (Nev. 2004).  Article 19, Section 2(1) of the Nevada Constitution provides that "the people reserve to themselves the power to propose, by initiative petition, statutes and amendments to statutes and amendments to this Constitution, and to enact or reject them at the polls."  Nev. Const. art 19, § 2(1).

86.    Nevadans' right to engage in political speech by circulating a ballot initiative as articulated by the Nevada Constitution is subject to First Amendment analysis. *Univ. & Cmty. Coll. Sys. of Nev.*, 100 P.3d at 187 (concluding that the protections afforded by Article 1, Section 9 and Article 19, Section 2 are subject to First Amendment analysis).

87.    The challenged restrictions impose a severe burden on Plaintiffs' First Amendment Rights by impeding their ability to advocate for the Initiative and limiting their ability to actually earn a place for the Initiative on the ballot.  Due this severe burden, strict scrutiny applies to the challenged restrictions.  *Angle,* 673 F.3d at 1133.

88.    In light of the restrictions imposed by the government in response to the Pandemic, requiring that the Initiative be submitted for verification no later than June 24, 2020

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

1   cannot withstand strict scrutiny.  Doing so is not narrowly tailored to satisfy a compelling

2   government interest.

3   89.    Requiring the Initiative to be submitted for verification no later than June 24,

4   2020 will likely unnecessarily preclude the Initiative from the ballot.  More time can—and must

5   be—allotted to collect signatures to ensure Plaintiffs' right to engage in political speech is

6   sufficiently protected, and doing so will not compromise the government's interest in ensuring

7   that only verified initiatives are included on the ballot.  Even if more time is allotted to gather the

8   required signatures, the county clerks will have sufficient time to verify the Initiative.

9   90.    The Secretary has taken the action necessary to facilitate an all-mail primary, and

10   she must similarly do so to protect Plaintiffs' constitutionally protected rights.  In refusing to do

11   so, she is violating Plaintiffs' constitutional rights.

12   91.    Absent relief from this Court, requiring the Initiative to be submitted for

13   verification no later than June 24, 2020 will prevent Plaintiffs from engaging in constitutionally

14   protected speech in violation of the Nevada Constitution.

15   92.    Plaintiffs will suffer irreparable harm and injury and have no plain, adequate or

16   speedy remedy at law to address the wrongs herein complained of other than this action. A

17   substantial loss or impairment of freedom of expression will continue to occur absent injunctive

18   relief.

19   **CLAIM 3: Undue Burden on the Right to Engage in Political Speech**
20   **(Due Process and 42 U.S.C. § 1983)**

21   93.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this

22   Complaint and the paragraphs below as though fully set forth herein.

23   94.    The Due Process clause of the U.S. Constitution guarantees the right to due

24   process of law and to equal protection of the laws.

25   95.    The challenged restrictions impose a severe burden on Plaintiffs' First

26   Amendment Rights by impeding their ability to advocate for the Initiative and limiting their

27   ability to actually earn a place for the Initiative on the ballot.  Due this severe burden, strict

28   scrutiny applies to the challenged restrictions.  *Angle¸*673 F.3d at 1133 .

McDONALD ⚫ CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

96.     In light of the restrictions imposed by the government in response to the Pandemic, requiring that the Initiative be submitted for verification no later than June 24, 2020 cannot withstand strict scrutiny.  Doing so is not narrowly tailored to satisfy a compelling government interest.

97.     Requiring the Initiative to be submitted for verification no later than June 24, 2020 will likely unnecessarily preclude the Initiative from the ballot.  More time can—and must be—allotted to collect signatures to ensure Plaintiffs' right to engage in political speech is sufficiently protected, and doing so will not compromise the government's interest in ensuring that only verified initiatives are included on the ballot.  Even if more time is allotted to gather the required signatures, the county clerks will have sufficient time to verify the Initiative.

98.     The Secretary has taken the action necessary to facilitate an all-mail primary, and she must similarly do so to protect Plaintiffs' constitutionally protected rights.   In refusing to do so, she is violating Plaintiffs' constitutional rights.

99.     Absent relief from this Court, requiring the Initiative to be submitted for verification no later than June 24, 2020 will prevent Plaintiffs from engaging in constitutionally protected speech in violation of the Due Process Clause.

100.     Plaintiffs will suffer irreparable harm and injury and have no plain, adequate or speedy remedy at law to address the wrongs herein complained of other than this action. A substantial loss or impairment of freedom of expression will continue to occur absent injunctive relief.

**CLAIM 4: Undue Burden on the Right to Vote**
**(First and Fourteenth Amendments)**

101.     Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

102.     The First Amendment and Fourteenth Amendments to the U.S. Constitution enshrine the right of every Nevadan to vote. *Burdick*, 504 U.S. at 441.

103.     The challenged restrictions impose a severe burden on Plaintiffs' First Amendment Rights to vote by impeding their ability to vote on the Initiative on the November

18

ballot.  Due this severe burden, strict scrutiny applies to the challenged restrictions.  *Angle*, 673 F.3d at 1133.

104.    In light of the restrictions imposed by the government in response to the Pandemic, requiring that the Initiative be submitted for verification no later than June 24, 2020 cannot withstand strict scrutiny.  Doing so is not narrowly tailored to satisfy a compelling government interest.

105.    Requiring the Initiative to be submitted for verification no later than June 24, 2020 will likely unnecessarily preclude the Initiative from the ballot and thus preclude Plaintiffs and other Nevada voters from voting on the measure.  More time can—and must be—allotted to collect signatures to ensure Plaintiffs' right to vote is sufficiently protected.  Doing so will not compromise the government's interest in ensuring that only verified initiatives are included on the ballot.  Even if more time is allotted to gather the required signatures, the county clerks will have sufficient time to verify the Initiative.

106.    The Secretary has taken the action necessary to facilitate an all mail primary, and she must similarly do so to protect Plaintiffs' constitutionally protected rights.   In refusing to do so, she is violating Plaintiffs' constitutional rights.

107.    Absent relief from this Court, requiring the Initiative to be submitted for verification no later than June 24, 2020 will prevent Plaintiffs from exercising their right to vote, in violation of the First and Fourteenth Amendments to the U.S. Constitution.

108.    Plaintiffs will suffer irreparable harm and injury and have no plain, adequate or speedy remedy at law to address the wrongs herein complained of other than this action. A substantial loss or impairment of freedom of expression will continue to occur absent injunctive relief.

**CLAIM 5: Undue Burden on the Right to Vote**
**(Nevada Constitution)**

109.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

110.     Article 2, Section 1 specifically guarantees the rights of Nevadans to vote "upon all questions submitted to the electors" at an election.  Nev. Const. art. 2, § 1.

111.     The challenged restrictions impose a severe burden on Plaintiffs' right to vote by impeding their ability to vote on the Initiative on the November ballot.  Due this severe burden, strict scrutiny applies to the challenged restrictions.  *Angle*, 673 F.3d at 1133.

112.     In light of the restrictions imposed by the government in response to the Pandemic, requiring that the Initiative be submitted for verification no later than June 24, 2020 cannot withstand strict scrutiny.  Doing so is not narrowly tailored to satisfy a compelling government interest.

113.     Requiring the Initiative to be submitted for verification no later than June 24, 2020 will likely unnecessarily preclude the Initiative from the ballot and thus preclude Plaintiffs and other Nevada voters from voting on the measure.  More time can—and must be—allotted to collect signatures to ensure Plaintiffs' right to vote is sufficiently protected.  Doing so will not compromise the government's interest in ensuring that only verified initiatives are included on the ballot.  Even if more time is allotted to gather the required signatures, the county clerks will have sufficient time to verify the Initiative.

114.     The Secretary has taken the action necessary to facilitate an all-mail primary, and she must similarly do so to protect Plaintiffs' constitutionally protected rights.   In refusing to do so, she is violating Plaintiffs' constitutional rights.

115.     Absent relief from this Court, requiring the Initiative to be submitted for verification no later than June 24, 2020 will prevent Plaintiffs from exercising their right to vote, in violation of the Nevada Constitution.

116.     Plaintiffs will suffer irreparable harm and injury and have no plain, adequate or speedy remedy at law to address the wrongs herein complained of other than this action. A substantial loss or impairment of freedom of expression will continue to occur absent injunctive relief.

//

//

20

**CLAIM 6: Undue Burden on Right to Vote**
**(Due Process and 42 U.S.C. §1983)**

117.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

118.    The Due Process clause of the U.S. Constitution guarantee the right to due process of law and to equal protection of the laws.

119.    The challenged restrictions impose a severe burden on Plaintiffs' First Amendment Rights to vote by impeding their ability to vote on the Initiative on the November ballot.  Due this severe burden, strict scrutiny applies to the challenged restrictions.  *Angle*, 673 F.3d at 1133.

120.    In light of the restrictions imposed by the government in response to the Pandemic, requiring that the Initiative be submitted for verification no later than June 24, 2020 cannot withstand strict scrutiny.  Doing so is not narrowly tailored to satisfy a compelling government interest.

121.    Requiring the Initiative to be submitted for verification no later than June 24, 2020 will likely unnecessarily preclude the Initiative from the ballot.  More time can—and must be—allotted to collect signatures to ensure Plaintiffs' right to engage in political speech is sufficiently protected, and doing so will not compromise the government's interest in ensuring that only verified initiatives are included on the ballot.  Even if more time is allotted to gather the required signatures, the county clerks will have sufficient time to verify the Initiative.

122.    The Secretary has taken the action necessary to facilitate an all-mail primary, and she must similarly do so to protect Plaintiffs' constitutionally protected rights.   In refusing to do so, she is violating Plaintiffs' constitutional rights.

123.    Absent relief from this Court, requiring the Initiative to be submitted for verification no later than June 24, 2020 will prevent Plaintiffs from engaging in constitutionally protected speech in violation of the Due Process Clause.

124.    Plaintiffs will suffer irreparable harm and injury and have no plain, adequate or speedy remedy at law to address the wrongs herein complained of other than this action.  A

21

substantial loss or impairment of freedom of expression will continue to occur absent injunctive relief.

## II.  CIRCULATOR'S AFFIDAVIT AND EQUAL PROTECTION

### CLAIM 7: Undue Burden on the Right to Engage in Political Speech
### (First and Fourteenth Amendments)

125.   Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

126.   The First Amendment and Fourteenth Amendments to the U.S. Constitution enshrine the right of every Nevadan to speech and political expression free from government interference.  Circulation of initiatives is core political speech. *Bradbury*, 438 F.3d at 961.

127.   The challenged restrictions impose a severe burden on Plaintiffs' First Amendment Rights by impeding the Initiative's proponents from qualifying it for the ballot and thus precluding Plaintiffs from voting on the Initiative.  Due this severe burden, strict scrutiny applies to the challenged restrictions.  *Angle*, 673 F.3d at 1133.

128.   In light of the restrictions imposed by the government in response to the Pandemic, the Secretary's interpretations requiring 1) hand signatures rather than electronic signatures and 2) the observation of these signatures in person rather than electronically, cannot withstand strict scrutiny.  Doing so is not narrowly tailored to satisfy a compelling government interest.

129.   The Secretary's requirements will likely preclude the Initiative from being included on the ballot notwithstanding the fact that it is unnecessary to satisfy the government's interest in avoiding fraud in signature gathering.  The use of electronic signatures on an electronically circulated initiative is sufficient to guard against the government's concern regarding fraud and will ensure that Plaintiffs have a reasonable opportunity to gather the required signatures.

130.   The Secretary has taken the action necessary to facilitate an all-mail primary, and she must similarly do so to protect Plaintiffs' constitutionally protected rights.  In refusing to do so, she is violating Plaintiffs' constitutional rights.

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

131.    Absent relief from this Court, requiring the use of hand signatures observed in person to qualify the Initiative for the ballot will prevent Plaintiffs from engaging in constitutionally protected speech in violation of the First and Fourteenth Amendments.

132.    Plaintiffs will suffer irreparable harm and injury and have no plain, adequate or speedy remedy at law to address the wrongs herein complained of other than this action. A substantial loss or impairment of freedom of expression will continue to occur absent injunctive relief.

**CLAIM 8: Undue Burden on the Right to Engage in Political Speech**
**(Nevada Constitution)**

133.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

134.    Article 1, Section 9 of the Nevada Constitution enshrine the right of every Nevadan to speech and political expression free from government interference. *See Univ. & Cmty. Coll. Sys. of Nev.*, 100 P.3d at 187. Article 19, Section 2(1) of the Nevada Constitution provides that "the people reserve to themselves the power to propose, by initiative, statutes and amendments to statutes and amendments to this Constitution, and to enact or reject them at the polls." Nev. Const. art 19, § 2(1).

135.    Nevadans' right to engage in political speech by circulating a ballot initiative as articulated by the Nevada Constitution is subject to First Amendment analysis. *Univ. & Cmty. Coll. Sys. of Nev.*, 100 P.3d at 187 (concluding that the protections afforded by Article 1, Section 9 and Article 19, Section 2 are subject to First Amendment analysis).

136.    The challenged restrictions impose a severe burden on Plaintiffs' First Amendment Rights by impeding the Initiative's proponents from qualifying it for the ballot and thus precluding Plaintiffs from voting on the Initiative. Due this severe burden, strict scrutiny applies to the challenged restrictions. *Angle*, 673 F.3d at 1133.

137.    In light of the restrictions imposed by the government in response to the Pandemic, the Secretary's interpretations requiring 1) hand signatures rather than electronic signatures and 2) the observation of these signatures in person rather than electronically, cannot

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

withstand strict scrutiny.  Doing so is not narrowly tailored to satisfy a compelling government interest.

138.   Requiring the use of hand signatures observed in person will likely preclude the Initiative from being included on the ballot notwithstanding the fact that it is unnecessary to satisfy the government's interest in avoiding fraud in signature gathering.  The use of electronic signatures on an electronically circulated initiative is sufficient to guard against the government's concern regarding fraud and will ensure that Plaintiffs have a reasonable opportunity to gather the required signatures.

139.   The Secretary has taken the action necessary to facilitate an all mail primary, and she must similarly do so to protect Plaintiffs' constitutionally protected rights.   In refusing to do so, she is violating Plaintiffs' constitutional rights.

140.   Absent relief from this Court, requiring the use of hand signatures observed in person to qualify the Initiative for the ballot will prevent Plaintiffs from engaging in constitutionally protected speech in violation of the Nevada Constitution.

### CLAIM 9: Undue Burden on Right to Engage in Political Speech
### (Due Process and 18 U.S.C. Sect. 1983)

141.   Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

142.   The Due Process clause of the U.S. Constitution guarantee the right to due process of law and to equal protection of the laws.

143.   The challenged restrictions impose a severe burden on Plaintiffs' First Amendment Rights by impeding the Initiative's proponents from qualifying it for the ballot and thus precluding Plaintiffs from voting on the Initiative.  Due this severe burden, strict scrutiny applies to the challenged restrictions.  *Angle*, 673 F.3d at 1133.

144.   In light of the restrictions imposed by the government in response to the Pandemic, the Secretary's interpretations requiring 1) hand signatures rather than electronic signatures and 2) the observation of these signatures in person rather than electronically, cannot

McDONALD ✦ CARANO
100 WEST LIBERTY STREET, TENTH FLOOR ✦ RENO, NEVADA 89501
PHONE 775.788.2000 ✦ FAX 775.788.2020

withstand strict scrutiny.  Doing so is not narrowly tailored to satisfy a compelling government interest.

145.    Requiring the use of hand signatures observed in person will likely preclude the Initiative from being included on the ballot notwithstanding the fact that it is unnecessary to satisfy the government's interest in avoiding fraud in signature gathering.  The use of electronic signatures on an electronically circulated initiative is sufficient to guard against the government's concern regarding fraud and will ensure that Plaintiffs have a reasonable opportunity to gather the required signatures.

146.    The Secretary has taken the action necessary to facilitate an all-mail primary, and she must similarly do so to protect Plaintiffs' constitutionally protected rights.   In refusing to do so, she is violating Plaintiffs' constitutional rights.

147.    Absent relief from this Court, requiring the use of hand signatures observed in person to qualify the Initiative for the ballot will prevent Plaintiffs from engaging in constitutionally protected speech in violation of the Due Process Clause.

### CLAIM 10: Undue Burden on the Right to Vote
### (First and Fourteenth Amendments)

148.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

149.    The First Amendment and Fourteenth Amendments to the U.S. Constitution enshrine the right of every Nevadan to vote.

150.    The challenged restrictions impose a severe burden on Plaintiffs' First Amendment Rights by impeding the Initiative's proponents from qualifying it for the ballot and thus precluding Plaintiffs from voting on the Initiative.  Due this severe burden, strict scrutiny applies to the challenged restrictions.  *Angle*, 673 F.3d at 1133.

151.    In light of the restrictions imposed by the government in response to the Pandemic, the Secretary's interpretations requiring 1) hand signatures rather than electronic signatures and 2) the observation of these signatures in person rather than electronically, cannot

McDONALD ⬥ CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

withstand strict scrutiny.  Doing so is not narrowly tailored to satisfy a compelling government interest.

152.    Requiring the use of hand signatures observed in person will likely preclude the Initiative from being included on the ballot and thus preclude Plaintiffs and other Nevada voters from voting on it notwithstanding the fact that use of electronic signatures on an electronically circulated initiative is sufficient to guard against the government's concern regarding fraud and will ensure that Plaintiffs have a reasonable opportunity to gather the required signatures.

153.    The Secretary has taken the action necessary to facilitate an all-mail primary, and she must similarly do so to protect Plaintiffs' constitutionally protected rights.   In refusing to do so, she is violating Plaintiffs' constitutional rights.

154.    Absent relief from this Court, requiring the use of hand signatures observed in person to qualify the Initiative for the ballot will prevent Plaintiffs from exercising their constitutionally protected right to vote.

### CLAIM 11:   Undue Burden on the Right to Vote
### (Nevada Constitution)

155.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

156.    Article 2, Section 1 specifically guarantees the rights of Nevadans to vote "upon all questions submitted to the electors" at an election.  Nev. Const. art. 2, § 1.

157.    The challenged restrictions impose a severe burden on Plaintiffs' First Amendment Rights by impeding the Initiative's proponents from qualifying it for the ballot and thus precluding Plaintiffs from voting on the Initiative.  Due this severe burden, strict scrutiny applies to the challenged restrictions.  *Angle*, 673 F.3d at 1133.

158.    In light of the restrictions imposed by the government in response to the Pandemic, requiring that use of hand signatures observed in person to qualify the Initiative be for the ballot cannot withstand strict scrutiny.  Doing so is not narrowly tailored to satisfy a compelling government interest.

159.   Requiring the use of hand signatures observed in person will likely preclude the Initiative from being included on the ballot and thus preclude Plaintiffs and other Nevada voters from voting on it notwithstanding the fact that use of electronic signatures on an electronically circulated initiative is sufficient to guard against the government's concern regarding fraud and will ensure that Plaintiffs have a reasonable opportunity to gather the required signatures.

160.   The Secretary has taken the action necessary to facilitate an all-mail primary, and she must similarly do so to protect Plaintiffs' constitutionally protected rights.   In refusing to do so, she is violating Plaintiffs' constitutional rights.

161.   Absent relief from this Court, requiring the use of hand signatures observed in person to qualify the Initiative for the ballot will prevent Plaintiffs from exercising their constitutionally protected right to vote.

### CLAIM 12:   Undue Burden on the Right to Vote
### (Due Process Clause and 42 U.S.C. § 1983)

162.   Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

163.   The Due Process clause of the U.S. Constitution guarantees the right to due process of law and to equal protection of the laws.

164.   The challenged restrictions impose a severe burden on Plaintiffs' First Amendment Rights by impeding the Initiative's proponents from qualifying it for the ballot and thus precluding Plaintiffs from voting on the Initiative.  Due this severe burden, strict scrutiny applies to the challenged restrictions.  *Angle*, 673 F.3d at 1133.

165.   In light of the restrictions imposed by the government in response to the Pandemic, requiring in-person observation of hand signatures cannot withstand strict scrutiny. Doing so is not narrowly tailored to satisfy a compelling government interest.

166.   Requiring the use of hand signatures observed in person will likely preclude the Initiative from being included on the ballot and thus preclude Plaintiffs and other Nevada voters from voting on it notwithstanding the fact that use of electronic signatures on an electronically

McDONALD ⊗ CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

circulated initiative is sufficient to guard against the government's concern regarding fraud and will ensure that Plaintiffs have a reasonable opportunity to gather the required signatures.

167.    The Secretary has taken the action necessary to facilitate an all-mail primary, and she must similarly do so to protect Plaintiffs' constitutionally protected rights.   In refusing to do so, she is violating Plaintiffs' constitutional rights.

168.    Absent relief from this Court, requiring the use of hand signatures observed in person to qualify the Initiative for the ballot will prevent Plaintiffs from exercising their constitutionally protected right to vote.

**CLAIM 13: Declaratory Relief**
**(28 U.S.C. §§ 2201 and 2202, NRS 30.040)**

169.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

170.    The Secretary interpreted NRS 295.0575 to preclude the use of electronic means to circulate the Initiative and further interpreted NRS 295.0575 to preclude the use of electronic means to sign the Initiative.

171.    The Secretary's interpretation is inconsistent with the plain meaning of NRS 295.0575.

172.    NRS 295.0575 does not preclude the use of electronic means to circulate or sign the Initiative.

173.    There is an actual controversy between the parties as set forth herein. A substantial loss or impairment of freedom of expression will continue to occur so long as Defendants' enforcement of the statutes continues.

174.    This Court should declare that NRS 295.0575 does not preclude circulation or signing of the Initiative by electronic means and should specifically authorize Plaintiffs to circulate the Initiative electronically for electronic signature.

//

//

//

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Declare that the application of NRS 295.056(3) violates the U.S. Constitution and Nevada Constitution by unduly burdening the initiative process;

B. Declare that the application of NRS 295.0575 violates the U.S. Constitution and Nevada Constitution by unduly burdening signature gathering efforts in support of the Initiative;

C. Issue a temporary restraining order and preliminary injunction enjoining the enforcement of NRS 295.056 and NRS 295.0575 to deny ballot access for the Initiative for at least so long as the Emergency Directives remain in place, subject to further extension;

D. Issue a preliminary injunction extending the deadline to submit a ballot question for verification for at least the same period for which Nevada's stay at home order is in place;

E. Issue a preliminary injunction to permit the electronic circulation of the Initiative and to accept electronic signatures;

F. Award Plaintiffs their costs, disbursements and reasonable attorneys' fees in bringing this action; and

G. Award such other relief and enter such other orders as necessary and appropriate.

DATED  May 6, 2020.

McDONALD CARANO LLP


By_____ /s/ Adam Hosmer-Henner_____
Adam D. Hosmer-Henner, Esq. (NSBN 12779)
Lucas Foletta, Esq. (NSBN 12154)
McDONALD CARANO LLP
100 W. Liberty, 10th Floor
Reno, NV 89501
Tel: 775 788 2000
ahosmerhenner@mcdonaldcarano.com
lfoletta@mcdoanldcarano.com

*Attorneys for Plaintiffs*
*Fair Maps Nevada PAC, Sondra Cosgrove,*
*Douglas Goodman, and Robert MacDonald*

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR ● RENO, NEVADA 89501
PHONE 775.788.2000 ● FAX 775.788.2020

**INDEX OF EXHIBITS**

| EXHIBIT # | DESCRIPTION | NUMBER OF PAGES |
|---|---|---|
| 1 | Initiative Petition C-02-2019 | 5 |
| 2 | WHO IHR Emergency Committee on Novel Corona Virus (2019 nCoV) | 4 |
| 3 | Proclamation on Suspension of Immigration | 6 |
| 4 | President's Statement Regarding $2.5 Billion Budget Request | 32 |
| 5 | CDC Briefing Transcript | 7 |
| 6 | CDC Briefing Transcript | 7 |
| 7 | CDC Gathering Guidance | 8 |
| 8 | National Declaration of Emergency | 3 |
| 9 | CDC Social Distancing Guidance | 3 |
| 10 | 15 Days to Slow the Spread | 3 |
| 11 | White House Document regarding 30 Days to Slow Spread | 2 |
| 12 | Governor Sisolak Declaration of Emergency | 3 |
| 13 | Emergency Directive 010 | 3 |
| 14 | Emergency Directive 007 | 3 |
| 15 | Emergency Directive 003 | 5 |
| 16 | Governor Sisolak Statement Regarding Closure of State Buildings | 4 |
| 17 | Article Regarding Local Government Enforcement of Emergency Directives | 21 |
| 18 | Emergency Directive | 4 |
| 19 | Secretary of State Press Release Regarding all Mail Primary | 2 |
| 20 | Secretary of State Notice Regarding Suspension of Person Service | 3 |
| 21 | Ohio Secretary of State Statement Regarding Election | 3 |
| 22 | Faulkner v. VA Department of Elections | 5 |
| 23 | Goldstein v. Secretary of the Commonwealth | 41 |
| 24 | Esshaki v. Whitmer | 14 |
| 25 | Correspondence from Fair Maps Nevada to Nevada Secretary of State | 4 |
| 26 | Correspondence from Nevada Secretary of State to Fair Maps Nevada | 1 |

4818-3089-5035, v. 2

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020