# Exhibit A

DECLARATION OF LAURA HALE

# Exhibit A

Adam Hosmer Henner (NV Bar No. 12779)
Lucas Foletta (NV Bar No. 12154)
McDONALD CARANO LLP
100 W. Liberty St., 10th Floor
Reno, NV 89501
Telephone: (775) 788-2000
Facsimile: (775) 788-2020
ahosmerhenner@mcdonaldcarano.com
lfoletta@mcdonaldcarano.com

*Attorneys for Plaintiffs Fair Maps Nevada, Sondra Cosgrove, Douglas Goodman, and Robert MacDonald*

# IN THE UNITED STATES DISCTRICT COURT

## DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| FAIR MAPS NEVADA, a Nevada political action committee, SONDRA COSGROVE, DOUGLAS GOODMAN, and ROBERT MACDONALD,<br><br>Plaintiffs,<br><br>v.<br><br>BARBARA CEGAVSKE, in her official capacity as Nevada Secretary of State, JOSEPH P. GLORIA, in his official capacity as Clark County Registrar of Voters, DEANNE SPIKULA, in her official capacity as Washoe County Registrar of Voters, KRISTINA JAKEMAN, in her official capacity as Elko County Clerk, SADIE SULLIVAN, in her official capacity as Lander County Clerk, LACEY DONALDSON, in her official capacity as Pershing County Clerk-Treasurer, VANESSA STEVENS, in her official capacity as Storey County Clerk-Treasurer, NICHOLE BALDWIN, in her official capacity as White Pine County Clerk, SANDRA MERLINO, in her official capacity as Nye County Clerk, TAMMI RAE SPERO, in her official capacity as Humboldt County Clerk, KATHY LEWIS, in her official capacity | Case No.:<br><br>**DECLARATION OF LAURA HALE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

as Douglas County Clerk-Treasurer, LINDA ROTHERY, in her official capacity as Churchill County Clerk-Treasurer, LACINDA ELGAN, in her official capacity as Esmeralda County Clerk-Treasurer, LISA C. LLOYD, in her official capacity as Lincoln County Clerk, LISA HOEHNA, in her official capacity as Eureka County Clerk, CHRISTOPHER NEPPER, in his official capacity as Mineral County Clerk-Treasurer, NIKKI BRYAN, in her official capacity as Lyon County Clerk-Treasurer, and AUBREY ROWLATT, in her official capacity as Carson City Clerk-Recorder,

Defendants.
_____/

I, Laura Hale, declare as follows:

1. I am over the age of eighteen (18) years. I have personal knowledge of the matters contained in this declaration except where stated upon information and belief, and as to those matters, I believe them to be true. I make this declaration in support of Plaintiffs' Motion for Preliminary Injunction ("Motion").

2. I am a resident of Carson City, Nevada. I am an officer of the Political Action Committee for Fair Maps Nevada, on behalf of Indivisible Northern Nevada.

3. Fair Maps is a Nevada Committee for Political Action Advocating Passage or Defeat of a Ballot Question registered pursuant to NRS 294A.230. Fair Maps' address is PO Box 751271, Las Vegas, Nevada 89136.

4. On November 4, 2019, Fair Maps filed Initiative Petition C-02-2019 pursuant to Article 19, Section 2. If enacted, the Initiative will amend the Nevada Constitution to provide for a redistricting commission to map electoral districts for the Nevada Senate, Assembly and U.S. House of Representatives.

5. On November 26, 2019, a lawsuit was brought challenging the legal sufficiency of the description of effect appended to the initiative. On January 7, 2020, Fair Maps filed Amended Initiative Petition C-02-2019 (the "Initiative") to reflect changes made to the description of effect following resolution of the case in district court.

6. Fair Maps is responsible for organizing and managing the circulation of the Initiative for signature and qualifying it for the November ballot. While Fair Maps continued and will continue to gather signatures in support of the Initiative, the challenger to the Initiative appealed to the Nevada Supreme Court where issues relating to the Initiative remain pending.

7. In order for the Initiative to qualify for the ballot, 97,598 valid signature must be verified. Because not all signatures can be verified, in reality many more signatures need to be gathered.

8. The COVID-19 pandemic (the "Pandemic") and associated social distancing requirements have made it highly unlikely that Fair Maps will be able to collect the signatures necessary to qualify the Initiative for the ballot in a traditional in-person manner.

9. Under normal circumstances, signatures are gathered using a variety of methods, all of which require interpersonal contact inconsistent with social distancing guidance and mandates issued by State, local and federal government.

10. Eligible voters are contacted door-to-door at their homes, in front of retail establishments, restaurants and entertainment venues, or in or around government buildings to solicit their interest in signing a petition. If, after a brief conversation, an individual is interested in signing the petition, the person signs the same piece of paper—most likely using the same pen—that others have signed, and goes about their business.

11. Fair Maps had planned to contact signers at all of the above-referenced locations—by going door-to-door, contacting signers in front of busy retail establishments, restaurants, entertainment venues and government buildings.

12. Fair Maps can no longer contact voters in the manner it contemplated. Nevadans have been ordered to stay at home. Most government buildings are closed. Restaurants, bars and entertainments venues are closed. Many retail establishments are closed. Public events have been canceled en masse. People are prohibited from gathering in parks in substantial numbers, and individuals must adhere to the extent practicable to a six foot social distancing limitation.

13. Consequently, individuals eligible to sign the Initiative have drastically limited their public engagement, resulting in fewer individuals being available to sign the Initiative. Beyond that, for those individuals that do venture out it is practically impossible to obtain a signature on the initiative without breaching the six-foot social distancing limit.

14. Furthermore, attempts to gather signatures subject petition circulators and the general public to health risk, and expose circulators to potential criminal and civil liability. This risk is heightened for circulators and voters with preexisting conditions that give rise to a heightened risk of COVID-19 complications. As a result, it is difficult to identify individual circulators and voters willing to circulate the Initiative.

15. The difficulty of gathering the requisite signatures in the current environment is exacerbated by the fact that there is no clear indication when the social distancing mandates will be lifted—to say nothing of when Nevadans will feel comfortable leaving their homes and engaging with signature gatherers.

16. It is my understanding that Governor Sisolak has extended his own stay-at-home order through at least May 15, 2020, and he has said that further easing of the social distancing restrictions will only occur if certain as yet to be obtained benchmarks are met. Consequently, it is unlikely that social distancing will be eased in time for Plaintiffs to qualify the Initiative for the November ballot in the traditional manner by June 24, 2020.

17. Fair Maps believes it needs an extension of the Initiative verification deadline corresponding at least to the length of time Nevada's stay at home order remains in place to gather the required signatures.

18. As an alternative to gathering personally observed hand signatures, Fair Maps has considered circulating the Initiative via the internet and use an electronic platform that matches the signers signature to personal identifiers on file with the Department of Motor Vehicles or Social Security Administration as is the process for when a voter registers by mail, through the DMV by appearing in person or using the DMV's on-line system, or via the Secretary of State's on-line system. Alternatively, Fair Maps could employ a different platform, in consultation with the Secretary of State, to have signers sign the Initiative. Either of these alternatives would present a more reasonable opportunity to gather the necessary signatures to qualify the Initiative for the ballot.

19. On April 20, 2020, Plaintiffs' counsel contacted the Secretary and made two requests. Plaintiff requested that Defendant clarify that NRS 295.0575 may be satisfied by electronic circulation of the Initiative and by the affixing of electronic signatures. (Compl., Ex. 25 at 3.) Plaintiff also requested that Defendant extend the deadline for submission of the Initiative for verification by at least six weeks. (*Id.*, Ex. 25 at 4.)

20. By letter of the same day, Defendant denied Plaintiff's requests. (*Id.*, Ex. 26 at 1.)

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 5, 2020

LAURA HALE