KEVIN BENSON, ESQ.
Nevada State Bar No. 9970
BENSON LAW, LLC.
123 W. Nye Lane, Suite #487
Carson City, NV 89706
Telephone: (775) 884-0838
Email: kevin@bensonlawnv.com

MATTHEW M. GRIFFIN, ESQ.
Nevada State Bar No. 8097
Matthew Griffin, PLLC
401 S. Curry Street
Carson City, NV 89703
Telephone: (775) 882-4002
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| FAIR MAPS NEVADA, et al.,<br><br>　　　　　Plaintiffs,<br>　v.<br><br>BARBARA CEGAVSKE, in her official capacity as Nevada Secretary of State, et al.,<br><br>　　　　　Defendants. | Case No.: 3:20-cv-00271<br><br>**MOTION TO INTERVENE** |

The REV. LEONARD JACKSON, a Nevada registered voter, and NEVADA RESORT ASSOCIATION PAC, a registered Nevada Political Action Committee, by and through counsel, Matt Griffin, Esq. of Matthew Griffin PLLC and Kevin Benson, Esq. of Benson Law, LLC, respectfully move to intervene as defendants in this action pursuant to Fed.R.Civ.P. 24.

**I.   INTRODUCTION**

Rev. Jackson and the Nevada Resort Association PAC ("NRA PAC") (together, "Proposed Intervenors") move to intervene as defendants in this action to protect their interests in preserving the

1

integrity of Nevada's initiative petition process. Plaintiffs are requesting this Court to enter extraordinary and broad relief that will substantially alter and undermine Nevada's laws governing qualification of ballot measures. For example, they request that the Court force election officials to accept electronic signatures on a petition. This would be in direct contravention of Nevada's statutes governing circulation of petitions, which were specifically designed to prevent fraud in the signature collection process.

"There is no First Amendment right to place an initiative on the ballot." *Angle v. Miller*, 673 F.3d 1122, 1133 (9th Cir. 2012). Legislating by ballot initiative is a state-created right. *Id.* "States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally." *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 191 (1999).

Pursuant to Nevada law, it is private parties such as Rev. Jackson and NRA PAC, not election officials, who must bring a civil lawsuit to challenge the legal sufficiency of a petition, including to correct problems with the petition itself or with circulation issues like fraudulent signatures. Both Rev. Jackson and NRA PAC have been and currently are engaged in such litigation in Nevada's state courts.

The relief Plaintiffs request from this Court would effectively gut the safeguards in Nevada law, and will very likely to destroy Proposed Intervenors' statutory rights challenge invalid or fraudulent signatures, opening the door to exactly the kind of fraud that Nevada's statutes were crafted to prevent.

The Court should therefore grant Rev. Jackson and NRA PAC the ability to intervene as defendants to protect their interest in the integrity of Nevada's initiative process.

## II.   FACTS

Nevada, like all states that permit legislation through initiative, imposes various requirements to ensure that the initiative process is fair and that initiatives that are placed on the ballot have met a certain threshold of voter support. For example, NRS 295.009(1)(a) limits an initiative petition to a single subject. NRS 295.009(1)(b) requires every initiative to contain a description of effect that explains to voters, in an accurate and non-misleading way, what the initiative will do. A third

example is NRS 295.012, which requires signatures to be obtained in all of Nevada's congressional districts, to ensure that a statewide initiative truly has statewide support.

However, the Secretary of State and local election officials do not enforce all of these requirements. Compliance with many of Nevada's initiative petition requirements is achieved through challenges filed by private parties. *See e.g.*, NRS 295.061(1) (authorizing an expedited civil action to challenge a petition's compliance with the single subject rule and the description of effect requirement); NRS 295.061(2) (authorizing an expedited civil action to challenge the legal sufficiency of a petition after it is certified as sufficient by the Secretary of State).

Private parties who have an interest in the subject matter of the petition must bring a lawsuit to ensure compliance. Thus, even if an initiative petition blatantly violates the single subject rule, if no one files a challenge, it will be placed on the ballot. Similarly, even if there is a substantial number of fraudulent signatures, a petition can qualify if no one files a lawsuit that exposes the fraud. However, such suits can be costly. Proposed Intervenors have already expended resources to bring such suits and intend to expend more resources, if necessary, after signatures are submitted for verification.

Proposed Intervenor Nevada Resort Association PAC represents gaming and resort properties in Nevada. Declaration of Virginia Valentine, attached hereto as "Exhibit 1." Gaming is, of course, a large part of Nevada's economy. Consequently, initiative petitions that would impact the industry are frequently proposed. *Id.* Part of NRA PAC's core functions is to monitor efforts to qualify ballot measures to ensure that they comply with Nevada's requirements. *Id.* As part of its normal operations, NRA PAC spends resources to monitor initiatives, and to challenge those that do not comply with Nevada law, when believes it is in the best interest of the association to do so. *Id.* An initiative petition that would increase the gaming taxes on certain properties is currently being circulated. *Id.* NRA PAC is currently challenging that initiative on the basis that it does not comply with the description of effect requirement in NRS 295.009(1)(b), and that case is currently pending at the Nevada Supreme Court. *Id.*; *see also* Nevada Supreme Court Case No. 81086.

Proposed Intervenor Rev. Jackson is a registered Nevada voter. Declaration of Rev. Jackson, attached hereto as "Exhibit 2." He has an interest in ensuring that only initiatives that comply with

3

Nevada law are placed on the ballot. *Id.* He brought an action in state court against Plaintiff Fair Maps Nevada PAC, asserting that the description of effect in Fair Maps' petition is inaccurate and materially misleading to voters, in violation of NRS 295.009(1)(b). *Id.* That case is now on appeal and is currently pending before the Nevada Supreme Court. *Id.*; see also Case No. 80563. He will be harmed if the deadline to gather signatures on that petition is extended because that would impair his ability to challenge the sufficiency of the signatures on the petition. *Id.* The genuineness of the signatures will be placed into serious question if the Court allows Plaintiffs to collect electronic signatures. Rev. Jackson will be harmed if a petition that does not comply with Nevada law is nevertheless allowed to be placed on the ballot because he would have to expend resources in a campaign that, had the law been followed, would never have occurred. *Id.*

### III.   LEGAL STANDARD FOR INTERVENTION

FRCP 24(a) permits a non-party to intervene as a matter of right upon a showing of four factors: "(1) it has a 'significant protectable interest' relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *United States v. Sprint Communs., Inc.*, 855 F.3d 985, 991 (9th Cir. 2017).

Under FRCP 24(b), the court "may permit anyone to intervene who . . . (B) has a claim or defense that shares with the main action a common question of law or fact." *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013) (quoting Fed. R. Civ. P. 24(b)(1)). Generally, permissive intervention under Rule 24(b) should be allowed where: (1) there is an independent ground for jurisdiction; (2) the motion is timely; and (3) "a common question of law and fact between the movant's claim or defense and the main action." *Id.*

"Rule 24 traditionally receives liberal construction in favor of applicants for intervention." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

/ / / /

/ / / /

/ / / /

4

## IV. ARGUMENT

**A. Proposed Intervenors are entitled to intervention as a matter of right.**

Rev. Jackson and NRA PAC are entitled to intervene as a matter of right because they satisfy all four of the criteria required in this Circuit.

1. <u>This Motion is timely.</u>

This Motion is timely because it has been filed only 7 days after the Complaint was filed in this case, and before the May 15, 2020 deadline the Court set for oppositions to the Plaintiffs' Motion for Preliminary Injunction. *See* Order, ECF #6.

2. <u>Proposed Intervenors have a significant protectable interest in the subject of this action.</u>

A person has a "significant protectable interest" in an action if: "(1) [the applicant] asserts an interest that is protected under some law, and (2) there is a 'relationship' between [the applicant's] legally protected interest and the plaintiff's claims." *Sprint*, 855 F.3d at 991. The question of whether there is a "relationship" between the applicant's interest and the plaintiff's claims is intended to be a practical inquiry. *United States v. City of L.A.*, 288 F.3d 391, 398 (9th Cir. 2002). "The 'interest' test is not a clear-cut or bright-line rule, because 'no specific legal or equitable interest need be established.'" *Id.* While not bright-line requirement, the relationship requirement is met if the plaintiff's claims will actually affect the applicant. *Id.*

Proposed Intervenors have legally protected interests in the integrity of Nevada's initiative petition process. These include, but are not limited to, the requirements that signatures be submitted for verification in a timely manner, and the enforcement of the laws that are designed to prevent fraud in signature gathering.

Under Nevada law, each of the county clerks verify a random sampling of the signatures on a statewide petition. The clerks review whether the signer is as registered voter, whether the signature matches the voter's registration file, whether the signer is a resident of the county, among other things. *See* NRS 293.12757 – 293.12795 (setting forth the process for verification of signatures and determination of sufficiency by the Secretary of State).

The clerks also review the circulator's affidavit to ensure that contains the necessary information. For example, NRS 295.0575(1) requires an affidavit that "the circulator **personally**

circulated the document." (Emphasis added.) It also requires the circulator to attest that "all the signatures were affixed **in the circulator's presence**." NRS 295.0575(5). These requirements exist to combat fraud in the signature gathering process. *See* Minutes of the Assembly Committee on Elections, Procedures, Ethics, and Constitutional Amendments Hearing on A.B. 604, p. 23 (Nev., April 5, 2007) (testimony regarding "massive fraud" and recounting a "signature party" at which over 100 people forged signatures on petitions); *Las Vegas Convention & Visitors Auth. v. Miller*, 124 Nev. 669, 694, 191 P.3d 1138, 1154 (2008) (recognizing that the requirements for the circulator's affidavit are intended to combat fraud in the signature collection process).

Based on their review of a random sample of signatures, the clerks use extrapolation to determine the total number of valid signatures in their respective counties, then forward those numbers to the Secretary of State. The Secretary of State then determines whether the petition has sufficient signatures statewide to qualify for the ballot.

NRS 293.12793 provides for an administrative appeal process for the *proponent* of a petition, if the Secretary of State finds that the number of signatures is *insufficient*. There is no similar process to appeal a determination that the number is sufficient. If the Secretary of State determines that the petition is sufficient, the only way to challenge that determination is for a private party to bring a civil action under NRS 295.061(2). Thus, if there was fraud in the circulation process, or if there were errors in the clerks' verification process, the only way to correct those problems is for a private party such as the Proposed Intervenors to bring a lawsuit to expose the issues, and for a court to determine the remedy.

If the Plaintiffs are permitted to electronically gather signatures, this would directly contravene clear requirements of Nevada law. It would open the door to exactly the kind of "massive fraud" that the statutes were intended to prevent. Additionally, the Court would have to require an entirely new and untested method of verifying electronic signatures. This will inject additional uncertainty and error into the signature verification process itself. This threatens Proposed Intervenors' interest in the integrity of the election process. It could allow Plaintiffs to qualify a petition through improper or unreliable means, requiring Proposed Intervenors to mount a campaign against the initiative which they would not be required to do if the law had been followed.

Proposed Intervenors also have a substantial interest in this action because extending the deadline to gather signatures would impede or preclude their statutory right to challenge the sufficiency of the petition. NRS 295.056 requires that, for constitutional amendments, the deadline to submit signatures for verification is the 15th day following the primary election, and for statutory amendments, the deadline is the 15th day following the general election. These deadlines allow each county the time necessary to go through the process of verifying the signatures. Furthermore, under federal law, ballots must be prepared and distributed to overseas and military voters at least 45 days before the election. 52 U.S.C. §§ 20302; *see also* NRS 293.309(2)(b). If a court challenge is pending that would cause any delay in that process, Nevada declares such challenges to be moot. NRS 293.309(3).

Consequently, if the deadline is extended to gather signatures, it is very likely that the Secretary of State will prepare, print, and distribute the ballots before the courts are able to resolve any challenge to the sufficiency of the petition, rendering the challenge moot. Accordingly, as a practical matter, Proposed Intervenors are likely to lose their right to challenge the sufficiency of the petition because there simply would not be enough time. This could allow an initiative to be placed on the ballot despite obvious fraud or errors in the signatures.

The risk of this occurring is especially high if the Court were to also allow electronic signatures or other novel, untested methods of signature gathering, because that would make it much more likely that a petition would contain a substantial number of fraudulent or invalid signatures. IT would also make it much more likely that the clerks were make mistakes in whatever new verification process is required. Yet there would be no time for vetting or challenging those signatures.

These adverse effects on Proposed Intervenors' statutory rights under Nevada law are more than sufficient to meet the "significant protectable interest" requirement for intervention as of right. In *City of L.A.*, the Ninth Circuit found that a police officer's union met this requirement because the complaint sought injunctive relief against its members and alleged facts that its members committed unconstitutional acts in the line of duty. 288 F.3d at 398-99. The court held that this was sufficient even though the proposed injunctive relief applied only to the city defendants, not the union itself. *Id.*

BENSON LAW NEVADA
123 W. Nye Lane, Suite 478
Carson City, NV 89706
(775) 884-0838

Similarly here, even though the Plaintiffs are seeking relief against the Secretary of State and the county election officials, Proposed Intervenors stand to lose their own rights under Nevada law if the relief is granted.

### 3. Disposition of the matter without intervention will impair Proposed Intervenor's ability to protect their interests.

"If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (internal quotations omitted).

As discussed to above, Proposed Intervenors' ability to protect their interests will be impaired if they are not permitted to intervene. They have a right to not be subjected to laws made through a fraudulent or invalid initiative petition, and they also have a right to bring challenges to petitions that fail to comply with Nevada law. Indeed, both Proposed Intervenors are currently parties to pending lawsuits challenging the validity of initiative petitions. These suits are authorized by NRS 295.061 and are the only method of ensuring compliance with many of Nevada's requirements for initiative petitions.

### 4. The existing Defendants do not adequately represent the Proposed Intervenors' interests.

"The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). The court examines three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.* The most important factor is the similarity (or lack thereof) between the interest of the proposed intervenor and that of the existing parties. *Id.*

Proposed Intervenors' interests are not adequately represented by the existing parties. As discussed above, many of Nevada's requirements for initiative petitions are not enforced by the Secretary of State, the county elections officials, or any other governmental entity. Instead, monitoring and challenges to the legal sufficiency of petitions is largely left up to private parties.

To illustrate, the county election officials verify signatures by comparing the signature on the petition to the signature in the voter registration file. NRS 293.1277(5). If a large number of signatures are turned in to that county, a statistical sampling method is used to extrapolate the number of valid signatures based on a random sample. NRS 293.1279. Thus, even though the counties "verify" the signatures, often not every signature is examined. It is possible that a large number of invalid signatures slip through the cracks.

There can also be errors in the verification process itself, which leads to incorrect sufficiency determinations. For example, a county might count as valid a particular signature that is randomly drawn, even though there is a defect in the document itself, rendering all the signatures on that document invalid. *See Las Vegas Convention & Visitors Auth. v. Miller*, 124 Nev. 669, 689-90, 191 P.3d 1138, 1151 (2008) (holding that it is appropriate to strike all the signatures on a document that contains a defective circulator affidavit).

Additionally, many problems are not apparent to the officials verifying signatures, and would never be corrected if not for a party like Rev. Jackson or NRA PAC investigating and challenging them. For example, in *Taxpayers for the Prot. of Nev. Jobs v. Arena Initiative Comm.*, a private party opposing the petition filed a challenge asserting, among other things, that many of the signatures were invalid because the circulators did not personally circulate the petition, as required by NRS 295.0575. Even though the county officials had deemed the signatures on those documents valid, the district court invalidated them in light of the evidence the plaintiff produced that in fact the documents were not personally circulated. Nev. Sup. Ct. Nos. 57157, 58350, 2012 Nev. Unpub. LEXIS 1101, at *3 (Aug. 1, 2012). The circulators had lied on their affidavits, but the clerks had no way of knowing about that fraud, and therefore it was not caught during the signature verification process.

Proposed Intervenors also overcome any presumption that the existing government defendants adequately represent their rights. *Cf. City of L.A.*, 288 F.3d at 402. The interests and objectives of Proposed Intervenors and the existing Defendants diverge because Proposed Intervenors are seeking to preserve their right and practical ability to challenge invalid petitions or invalid signatures through a process that is never used by the election officials, and could very well be adverse to the election

officials. The interests of Proposed Intervenors and the election officials are different because the election officials are primarily seeking to ensure that ballots are prepared in time for distribution to voters. They do not have any interest in the merits of any ballot measure. Voters in general comprise the constituency that the election officials represent. The election officials are not charged with representing Proposed Intervenors' interests because, as explained above, it is private parties, not the election officials, who must bring a challenge to ensure compliance with numerous requirements for initiatives.

Because of these divergent interests, the existing Defendants will not make all of the same arguments that Proposed Intervenors will make. Nor do the existing Defendants have the knowledge and experience of the boots-on-the-ground signature collection process that is necessary to support, factually and legally, Proposed Intervenors' arguments regarding why electronic signature gathering and other relief Plaintiffs request is likely to lead to errors and fraud. Thus Proposed Intervenors can provide necessary input and argument regarding the important role that Nevada law grants to private parties to ensure the integrity of Nevada's initiative process.

For these reasons, Proposed Intervenors should be granted intervention as a matter of right, pursuant to FRCP 24(a).

### B. Alternatively, Proposed Intervenors should be granted permissive intervention.

Alternatively, if the Court finds that Proposed Intervenors are not entitled to intervene as a matter of right, it should grant Proposed Intervenors permissive intervention.

Under FRCP 24(b), the court "may permit anyone to intervene who . . . (B) has a claim or defense that shares with the main action a common question of law or fact." *Blum v. Merrill Lynch Pierce Fenner & Smith Inc*., 712 F.3d 1349, 1353 (9th Cir. 2013) (quoting Fed. R. Civ. P. 24(b)(1)). Generally, permissive intervention under Rule 24(b) should be allowed where: (1) there is an independent ground for jurisdiction; (2) the motion is timely; and (3) "a common question of law and fact between the movant's claim or defense and the main action." *Id.* The requirement for an independent ground for jurisdiction does not apply in federal question cases where jurisdiction is predicated on the plaintiff's claims and the defendant is not bringing any additional claims. *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011).

The remaining two prongs of the test are easily met in this case. First, as discussed above, this Motion is timely. Second, there are common questions of law and fact between the Plaintiffs' claims and Proposed Intervenors' defenses. Common questions of law include whether Nevada law allows using electronic signatures to sign an initiative petition and whether strict scrutiny or *Andersen-Burdick* balancing applies to Plaintiff's First Amendment claims. Common questions of fact include whether Plaintiffs have made reasonable efforts to circulate their petition, and whether it is technologically feasible to use electronic signatures, among other things.

Granting intervention in this case will not unduly delay or prejudice any party. Proposed Intervenors have acted swiftly to intervene. Their proposed Opposition to Plaintiffs' Motion for Preliminary Injunction is attached as an exhibit to this Motion, and therefore is in compliance with the Court's order expediting briefing.

Finally, judicial economy favors granting intervention. If Proposed Intervenors are not able to intervene in this case, they would likely be forced to bring a separate action to protect their interests. That action would involve many of the same issues and therefore it would be a waste of judicial resources compared to intervention.

## V. CONCLUSION

Rev. Jackson and NRA PAC respectfully request that this Court grant their request to intervene as defendants as a matter of right. Alternatively, they request that this Court grant them permissive intervention.

Dated this   13th   day of May, 2020.

BENSON LAW, LLC

By: _____
KEVIN BENSON, ESQ.
Nevada State Bar No. 9970
123 W. Nye Lane, Suite #487
Carson City, NV  89706
Telephone: (775) 884-0838
Email: kevin@bensonlawnv.com

11

**CERTIFICATE OF SERVICE**

Pursuant to NRCP Rule 5(b), I hereby certify that I am an employee of Benson Law, LLC, and that on this date, I caused the foregoing <u>Motion to Intervene</u> to be served to all parties to this action by:

   \_\_\_\_\_   Placing a true copy thereof in a sealed postage prepaid envelope in the United States Mail in Carson City, Nevada [NRCP 5(b)(2)(B)]

   \_\_\_\_\_   Hand-delivery - via Reno/Carson Messenger Service [NRCP 5(b)(2)(A)]

   \_\_\_\_\_   Facsimile

   \_\_\_\_\_   E-Mail, pursuant to consent to electronic service [NRCP 5(b)(2)(D)]

   \_\_\_\_\_   Federal Express, UPS, or other overnight delivery

   \_\_\_\_\_   E-filing pursuant to Section IV of District of Nevada Electronic Filing Procedures [NRCP 5(b)(2)(D)]

   \_\_X\_\_   E-filing through the federal courts' CM / ECF filing and service system.

as follows:

Adam D. Hosmer-Henner, Esq. (NSBN 12779)
Lucas Foletta, Esq. (NSBN 12154)
McDONALD CARANO LLP
100 W. Liberty, 10th Floor
Reno, NV 89501
*Attorneys for Plaintiffs*

Greg Zunino
Craig Newby
Office of the Attorney General
100 N. Carson Street
Carson City, Nevada 89701
*Attorneys for Defendant Secretary of State*

Herbert B. Kaplan
One South Sierra Street
Reno, NV 89501
*Attorney for Defendant Spikula*

Marquis AurbachCoffing
Craig R. Anderson, Esq.
Brian R. Hardy, Esq.
10001 Park Run Drive
Las Vegas, Nevada 89145
*Attorneys for Defendants Jakeman, Sullivan, Donaldson, Stevens, Baldwin, Merlino, Spero, Lewis, Rothery, Elgan, Lloyd, Hoehne, Nepper, and Bryan*
*(collectively the "Rural County Defendants")*

Dated:    May 13, 2020

                                          An employee of Benson Law, LLC

**INDEX OF EXHIBITS**

| | |
|---|---|
| Exhibit 1 | Declaration of Virginia Valentine |
| Exhibit 2 | Declaration of Rev. Leonard Jackson |
| Exhibit 3 | (Proposed) Intervenors' Opposition to Motion for Preliminary Injunction |