Adam D. Hosmer-Henner, Esq. (NSBN 12779)
Lucas Foletta, Esq. (NSBN 12154)
McDONALD CARANO LLP
100 W. Liberty, 10th Floor
Reno, NV 89501
Tel: 775 788 2000
ahosmerhenner@mcdonaldcarano.com
lfoletta@mcdoanldcarano.com

*Attorneys for Plaintiffs*
*Fair Maps Nevada PAC, Sondra Cosgrove,*
*Douglas Goodman, and Robert MacDonald*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| FAIR MAPS NEVADA, a Nevada political action committee, SONDRA COSGROVE, DOUGLAS GOODMAN, and ROBERT MACDONALD,<br><br>   Plaintiffs,<br><br>  v.<br><br>BARBARA CEGAVSKE, in her official capacity as Nevada Secretary of State, JOSEPH P. GLORIA, in his official capacity as Clark County Registrar of Voters, DEANNE SPIKULA, in her official capacity as Washoe County Registrar of Voters, KRISTINA JAKEMAN, in her official capacity as Elko County Clerk, SADIE SULLIVAN, in her official capacity as Lander County Clerk, LACEY DONALDSON, in her official capacity as Pershing County Clerk-Treasurer, VANESSA STEVENS, in her official capacity as Storey County Clerk-Treasurer, NICHOLE BALDWIN, in her official capacity as White Pine County Clerk, SANDRA MERLINO, in her official capacity as Nye County Clerk, TAMMI RAE SPERO, in her official capacity as Humboldt County Clerk, KATHY LEWIS, in her official capacity as Douglas County Clerk-Treasurer, LINDA ROTHERY, in her official capacity as Churchill County Clerk-Treasurer, LACINDA ELGAN, in her official capacity as Esmeralda County Clerk-Treasurer, LISA C. LLOYD, in her official capacity as Lincoln County Clerk, LISA HOEHNA, in her official capacity as Eureka County Clerk, CHRISTOPHER NEPPER, in his official | Case No.: 3-20:cv-00271-MMD-WGC<br><br>**PLAINTIFFS' OPPPOSITION TO MOTION TO INTERVENE (ECF No. 15)** |

capacity as Mineral County Clerk-Treasurer, NIKKI BRYAN, in her official capacity as Lyon County Clerk-Treasurer, and AUBREY ROWLATT, in her official capacity as Carson City Clerk-Recorder,

Defendants.

Plaintiffs Fair Maps Nevada ("Fair Maps"), Sondra Cosgrove, Douglas Goodman and Robert MacDonald, by and through their undersigned counsel, oppose proposed Intervenors Rev. Leonard Jackson and Nevada Resort Association PAC's ("NRA PAC") Motion to Intervene (ECF 15) ("Motion").

**I.  INTRODUCTION**

Rev. Jackson and NRA PAC are currently challenging political initiatives in Nevada state court and seeking to stop these initiatives from appearing on the ballot. Specifically, Rev. Jackson sued to block Fair Maps' initiative from appearing on the ballot and then he appealed to the Nevada Supreme Court, where the case remains pending. Rev. Jackon's attempt to intervene weighs in favor of Fair Maps as it shows the legal and regulatory obstacles that an initiative proponent faces in Nevada and the attempt supports Fair Maps' request for relief given the compressed timelines created by Rev. Jackson's litigation. However, intervention should be denied as Rev. Jackson and NRA Pac fail to identify a significant protectable interest that will be practically impaired through these proceedings.

Intervention is not warranted based on the remote possibility that 1) Secretary of State ("Secretary") will incorrectly certify the initiative as sufficient, 2) Rev. Jackson and NRA PAC to file suit against the initiative, 3) the lawsuit by Rev. Jackson and NRA PAC will not be expedited to obtain resolution prior to the election, and 4) the lawsuit by Rev. Jackson and NRA PAC will be successful. The named defendants—in particular, the Secretary of State ("Secretary"), Nevada's chief elections officer—adequately represent the election process and Rev. Jackson and NRA PAC do not have interests that are different from any other Nevadan. There are no material, substantive differences between the arguments advanced by the named defendants and those set

2

forth in the proposed filing by Rev. Jackson and NRA PAC. Therefore, intervention of right is unavailable. Permissive intervention is also inappropriate. Rev. Jackson and NRA PAC's interests are adequately represented by the named defendants, and including them in the litigation would only result in increasing the burden and complexity of these proceedings, for which time is of the essence. Unlike this Court's decision in *Paher v. Cegavske*, Case No. 3-20-cv-00243-MMD-WGC, the proposed intervenors are not seeking to protect their right to vote or to promote the franchise, they are seeking to intervene in order to protect their purported right to litigate to keep an initiative off the ballot and away from the voters. For these reasons, the Court should deny intervention.

## II.  LEGAL STANDARD

### A. Intervention of Right

Rule 24(a)(2) of the Federal Rules of Civil Procedure provides for intervention as of right for anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). To satisfy this rule, the moving party must demonstrate the following:

> (1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (citations omitted). "An applicant for intervention bears the burden of showing that all four requirements are met." *PEST Comm. v. Miller*, 648 F. Supp. 2d 1202, 1211 (D. Nev. 2009) (citing *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)).

### B. Permissive Intervention

Rule 24(b) permits the Court to allow intervention by any party who submits a timely motion to intervene and "has a claim or defense that shares with the main action a common

3

question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In order to satisfy these requirements, an intervening party "must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *PEST Comm.*, 648 F. Supp. 2d at 1214 (quoting *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998)). However, "a district court has discretion to deny permissive intervention even if the applicant satisfies the threshold requirements." *Id*. In exercising this discretion, "a court should consider whether intervention will unduly delay or prejudice the original parties, whether the applicant's interests are adequately represented by the existing parties, and whether judicial economy favors intervention." *Id*. (citing *Venegas v. Skaggs,* 867 F.2d 527, 530–31 (9th Cir.1989)).

### III. ARGUMENT

#### A. Intervention under Rule 24(a)

"An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *PEST Comm.*, 648 F. Supp. 2d at 1212 (quoting *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)). While "[t]he interest test is not a bright-line rule," a party "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Id.* (quoting *Alisal Water Corp.*, 370 F.3d at 919 and *Lockyer*, 450 F.3d at 441). Additionally, "[a]n applicant generally satisfies the 'relationship' requirement only if the resolution of plaintiff's claims actually will affect the applicant." *Id*. (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003)). To be successful, the applicant must demonstrate a "direct, non-contingent, substantial and legally protectable" interest. *Southern California Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (quoting *Dilks v. Aloha airlines*, 642 F.2d 1155, 1157 (9th Cir. 1981). In this instance, Rev. Jackson and NRA PAC fail to identify a significant protectable interest that will be impaired as a result of these proceedings. Instead, they have demonstrated, at best, an interest in pursuing future litigation challenging Plaintiffs' right to access the ballot contingent on the outcome of this proceeding and contingent on the Secretary's certification of the Initiative as sufficient.

4

### i. Rev. Jackson and NRA PAC fail to identify a significant protectable interest that will be impaired as a result of these proceedings.

Both Rev. Jackson and NRA PAC argue that they have a significant protectable interest in their desire to litigate to completion any lawsuit they may file pursuant to NRS 295.061(2) to address "fraud in the circulation process" or "errors in the clerks' verification process." (ECF 15 at 6.) They contend that any delay in the submission of Initiative Petition C-02-2019 ("Initiative") will cause them to lose their right to file and resolve any court challenge to the Initiative because ballots will likely have been prepared, printed and distributed before the case is litigated to finality. (*Id.* at 7.) They contend this renders any such suit moot pursuant to NRS 293.309(3). (*Id.*)

Rev. Jackson and NRA PAC's claim is misguided. While NRS 295.061(2) provides that "[t]he legal sufficiency of a petition for initiative or referendum may be challenged by filing a complaint in district court," nothing in the law gives Rev. Jackson and NRA PAC a "right" to have any such litigation resolved prior to the issuance of ballots. Under the schedule prepared by the Secretary, the certification date of the Initiative is listed as August 5, 2020 and the preparation of the ballot materials would be on September 19, 2020. (ECF 25-1). According to Rev. Jackson and NRA PAC, this is the window in which they would have to bring a challenge pursuant to NRS 295.061(2) and have it resolved to completion (including appeals). The proper timeline to consider is between the submission/certification date and the election. According to the same schedule, the relief requested by Plaintiffs would still provide proposed intervenors with approximately 1.5 months in which to have their case litigated prior to the election. *Id.*

The Ninth Circuit's decision in *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 399-400 (9th Cir. 2002) is wholly distinguishable and the citation to it by Rev. Jackson and NRA PAC is inapposite. In *City of L.A.*, the police union "had a protectable interest in the remedy sought by the United States" because it had "state-law rights to negotiate about . . . the collective bargaining agreement" and these rights "gave it an interest in the consent decree at issue." *Id.* That decision is miles away from the present circumstance where Rev. Jackson and NRA PAC are attempting to represent any Nevadan with an interest in potentially suing to block an initiative petition.

5

Moreover, as Rev. Jackson and NRA PAC themselves point out, NRS 293.309(3) specifically provides that any "[a]ny legal action which would prevent the ballot from being issued pursuant to subsection 2 is moot and of no effect." NRS 293.309(3). Thus, any suit pursuant to NRS 295.061(2) challenging the verification of signatures that would prevent ballots from being issued pursuant to the absent ballot timelines set forth in NRS 293.309(2) would be moot by statute. NRS 293.309(3) acts as a general limit on the extent to which Rev. Jackson and NRA PAC can pursue certain relief pursuant to NRS 295.061(2). By its own terms, it moots cases that prevent the issuance of ballots on certain timeframes regardless of whether there is sufficient time to pursue the underlying case. Indeed, the Nevada Supreme Court has applied it as such. *See Burdish v. Miller*, Nos. 56795, 56893, 2010 WL 3929070, at *2 (Nev. 2010) (unpublished) (concluding that petitioners request to have candidate's name removed from ballots was moot pursuant to NRS 293.309(3) because "no further changes to absentee ballots are possible").

It does so to ensure administrative efficiency in the issuance of ballots. *See* Minutes, Assemb. Elections Comm., 1971 Leg., 56th Sess., at 51 (Nev. March 12, 1971), https://www.leg.state.nv.us/Division/Research/Library/LegHistory/LHs/1971/AB564,1971.pdf (testimony of Washoe County Registrar of Voters Alex Coon describing the purpose of the provision "to get ballots mailed or issued. Up to the last election, injunctions have been to hold up printing ballots."). Thus, NRS 293.309(3) reflects the Legislature's policy judgment that lawsuits that would prevent the issuance of ballots should not be entertained, regardless of whether there is time to litigate them to the merits. Therefore, neither Rev. Jackson nor NRA PAC have a right to litigate any such lawsuit to completion. Instead, they have the right to challenge the legal sufficiency of the Initiative only insofar as doing so will not prevent the issuance of ballots in the manner prescribed by law. A desire to litigate in the future based on the contingency of the outcome of this litigation is not a sufficient interest that would be impaired such that the Court should grant intervention. *See Lynch*, 307 F.3d at 803 (rejecting applicant's intervention because it was based on a contingent, unsecured claim against a third-party debtor).

In considering Rev. Jackson and NRA PAC's application to intervene, the Court should note its recent decision in *Paher v. Cegavske*, Case No. 3:30-cv-00243-MMD-WGC. There, the

6

1  Court granted the application of the Nevada State Democratic Party, DNC Services
2  Corporation/Democratic National Committee, DCCC, Priorities USA, and an individual, John
3  Stanton. (Order (ECF 39) at 6.) In doing so, the Court concluded that the applicants had identified
4  a significant protectable interest in promoting the franchise and ensuring the election of
5  Democratic Party candidates, as well as the individual interest in voting by mail. (*Id*. at 4.) Thus,
6  the Court permitted intervention so that the applicants could protect their rights to participate in
7  the electoral process. (*See id*.) In this case, Rev. Jackson and NRA PAC propose an entirely
8  different interest—an interest in frustrating Plaintiffs' access to the ballot. The Court should reject
9  this approach. As such, neither Rev. Jackson nor NRA PAC have identified an interest that is
10 distinct from any other voter who plans on voting against the Initiative.

11 As an aside, it is not surprising that Rev. Jackson would assert a right to litigate the
12 Initiative to completion as a bar to the relief sought. Rev. Jackson first initiated litigation against
13 the Initiative in state court on November 26, 2019. After prevailing in district court, Rev. Jackson,
14 not satisfied with the judgment in his favor and still appealed to the Nevada Supreme Court, where
15 the matter remains pending. Thus, Rev. Jackson has tied the Initiative up in litigation for the better
16 part of five months, and apparently intends to continue that effort, all to prevent the Initiative from
17 reaching a vote of the people. Rev. Jackson's attempt to intervene should also demonstrate to the
18 Court the legal obstacles faced by Fair Maps in attempting to gather signatures and should dispel
19 any notion that Fair Maps has not been diligently attempting to complete the ballot qualification
20 process. Rather than sit idly by or act passively, Fair Maps has been actively defending its
21 initiative in response to continuous legal challenges that Rev. Jackson has brought to frustrate and
22 delay Fair Maps' political rights.

23 **ii. NRA PAC Lacks a Significant Protectable Interest.**

24 NRA PAC's assertion of a significant protectable interest in this matter is even weaker
25 than Rev. Jackson's interest. NRA PAC has not been a party to any of the litigation that preceded
26 this case with respect to the Initiative, and nothing in NRA PAC's Motion or supporting
27 declaration indicates a particular interest in the substance of the Initiative. To the contrary, the
28 declaration supporting NRA PAC's Motion sets forth a specified interest in "litigation regarding

7

an initiative petition that proposes to raise the gaming fee on certain properties." (ECF 15-1 ¶ 6.) This is apparently a reference to Initiative Petition S-01-2020 ("Gaming Tax Initiative") filed by Nevadans for Fair Gaming Taxes.

The Gaming Tax Initiative proposes to amend Nevada statutes to increase the gaming tax percentage on gaming revenues above $250,000 from 6 ¾ percent to 9 ¾ percent. The Gaming Tax Initiative, however, is a statutory initiative. As such, it must be submitted for verification "not later than the 15th day following the general election." NRS 295.056(2). In this case, that falls on November 18, 2020. As a statutory initiative, the Gaming Tax Initiative must, after verification, be presented to the Legislature at the 2021 legislative session. Nev. Const. art. 19, § 2(3). If the Legislature fails to adopt it, it will appear on the 2022 general election ballot. *Id.*

Given the absence of any clear interest in the substance of the Initiative and the lack of an effect in this action on the timeframe for approval of the Gaming Tax Initiative, NRA PAC's assertion that it has a significant protectable interest in this matter is unpersuasive. Any interest NRA PAC may have in challenging the verification of the Gaming Tax Initiative—which appears to be its principal concern—would not be subject to the time pressure associated with extending the time for submitting the Initiative for verification. There will be two years between submission of the Gaming Tax Initiative for verification and the general election in connection with which it will appear on the ballot. Therefore, even if there is a protectable interest in litigating a verification challenge to completion, that interest will not be subject to any shortened time period for resolution.

**iii. Rev. Jackson and NRA PAC's interests are adequately represented by the named defendants.**

In determining whether a named party will adequately represent the interests of an applicant for intervention, courts consider three factors:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

8

*Arakaki*, 324 F.3d at 1086. "In addition, '[w]hen an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises.' Further, when the government acts on behalf of its citizens, a court should presume the government adequately represents its citizens' interests." *PEST Comm.*, 648 F. Supp. 2d. at 1212 (alteration in original) (internal citation omitted) (quoting *Arakaki*, 324 F.3d at 1086).

In this case, the Secretary and the other named defendants are entitled to a presumption that they adequately represent Rev. Jackson and NRA PAC's interests. The named defendants, Rev. Jackson and NRA PAC share the same goal—to uphold the Secretary's refusal to extend the verification deadline and require the use of hand signatures affixed in the circulator's physical presence. (*E.g.*, ECF 25 at 2-4; ECF 15-3 at 9-15.) Since this is the case, Rev. Jackson and NRA PAC "must make a compelling showing that the Secretary inadequately represents their interests." *PEST Comm.*, 648 F. Supp. 2d at 1213 (citing *Arakaki*, 324 F.3d. at 1086.)

Rev. Jackson and NRA PAC attempt to overcome the presumption afforded the Secretary and other named defendants by asserting that they are seeking to preserve their right to litigate the Initiative in the event they determine the requirements of Nevada law have not been satisfied whereas the named defendants "are primarily seeking to ensure that ballots are prepared in time for distribution to voters." (ECF 15 at 9-10.) The Secretary and other named defendants, however, have an equal interest in making sure that there is a sufficient timeline for all electoral processes, including potential legal challenges. As set forth above though, Rev. Jackson and NRA PAC do not have a statutory right to litigate alleged deficiencies in the Initiative to completion prior to the issuance of ballots. Therefore, even the interest Rev. Jackson and NRA PAC claim distinguishes it from the named defendants is illusory.

Moreover, and perhaps more importantly, a comparison of the oppositions to Plaintiffs' Motion for Preliminary Injunction (ECF 2) filed by the named defendants and Rev. Jackson and NRA PAC's own proposed opposition reveal that the named defendants adequately represent the interests of Rev. Jackson and NRA PAC. The Secretary, for example, seeks dismissal on jurisdictional grounds, (ECF 25 at 14), argues against the application of strict scrutiny, (*id*. at 12-13), raises the verification schedule as an impediment to the relief sought by Plaintiffs (*id*. at 19-

20), asserts Plaintiffs alleged lack of diligence as a defense against issuing the requested relief, (*id*. at 21), engages in a textual analysis of NRS 293 in defense of the hand signature requirement, (*id*. at 15-16), and asserts the State's interest in ensuring adequate public support and against election fraud in support of its request that the Court deny Plaintiffs' Motion for Preliminary Injunction, (*id*. at 21).

These are all arguments made by Rev. Jackson and NRA PAC. (ECF 15-3 at 3 (arguing Plaintiffs failed to demonstrate attempts to circulate the Initiative); *id.* at 6-7 (arguing against strict scrutiny); *id.* at 9-11 (asserting the State's interest in guarding against fraud as a bar to the relief sought); *id.* at 11-12 (asserting the election schedule and ballot issuance as a bar to extending the verification submission deadline); *id.* at 14-15 (engaging in a textual analysis of NRS 293 against the use of electronic signatures)). In fact, it is difficult to identify any substantive arguments that address the legal and equitable issues raised by Plaintiffs Complaint (ECF 1) and Motion for Preliminary Injunction made by Rev. Jackson and NRA PAC that are not also made by the named defendants.

For these reasons, the Court should conclude that Rev. Jackson and NRA PAC have failed to overcome the presumption that the named defendants adequately represent their interests. Therefore, they are not entitled to intervene as a matter of right. *See PEST Comm.*, 648 F. Supp. 2d at 1213-14 (denying intervention as of right where Nevada's Secretary of State advanced the same arguments as the applicants for intervention).

### B. Intervention under Rule 24(b)

The Court should not exercise its discretion to permit intervention by Rev. Jackson and NRA PAC's because their interests are adequately represented by the named defendants and because including them in the litigation will unnecessarily burden the proceedings. As set forth above, Rev. Jackson and NRA PAC make essentially the same arguments against granting Plaintiffs' Motion for Preliminary Injunction as have already been advanced by the named defendants.

Rev. Jackson and NRA PAC have asserted an issue unrelated to this action by asserting a separate interest in litigating alleged deficiencies in the Initiative. This would require the Court to

determine whether Nevada law permits such challenges and if so, under what circumstances and timelines. The Supreme Court of Nevada has not yet reached many of these questions and so the Court would be speculating as to whether Rev. Jackson and NRA PAC even had a potentially protectable interest.

Allowing Rev. Jackson and NRA PAC to participate in the litigation will result in the inclusion of additional and unnecessary parties reiterating arguments made by the named defendants. This will complicate the proceedings and potentially delay them. Even though Plaintiffs do not dispute the timeliness of the Motion to Intervene, this does not mean that further delay will not result from the proposed intervenor's involvement. *Perry*, 587 F.3d at 956 ("It was well within the district court's discretion to find that the delay occasioned by intervention outweighed the value added by the Campaign's participation in the suit.").

## IV. CONCLUSION

The Court should deny Rev. Jackson and NRA PAC's Motion to Intervene. Rev. Jackson and NRA PAC fail to identify a significant protectable interest that will be impaired by the Court's order in these proceedings. Furthermore, their interests are adequately protected by the named defendants. They make no substantive arguments as to the validity of Plaintiffs' requests that have not already been made by the Secretary and local election officials and including them in these proceedings will unnecessarily burden these proceedings, which are already unfolding on an expedited timetable.

DATED: May 18, 2020                         Respectfully submitted:

By  */s/ Adam Hosmer-Henner*
Adam D. Hosmer-Henner, Esq. (NSBN 12779)
Lucas Foletta, Esq. (NSBN 12154)
McDONALD CARANO LLP
100 W. Liberty, 10th Floor
Reno, NV 89501
Tel: 775 788 2000
ahosmerhenner@mcdonaldcarano.com
lfoletta@mcdoanldcarano.com

*Counsel for Plaintiffs*